Larry A. **ROWE**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 19909.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 20, 1966.

Decided Dec. 1, 1966.

Mr. Russell S. Bernhard, Washington, D. C. (appointed by this court), for appellant.

Mr. Robert Kenly Webster, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and LEVENTHAL, Circuit Judge.

PER CURIAM:

■ Appellant was convicted of manslaughter, in two counts, and of assault with a deadly weapon.[1] He alleges that the trial court erred in failing to grant his motion for a judgment of acquittal, made at both the close of the government's case and his case, because the jury

1. D.C.Code §§ 22–502, 22–2405. He was also convicted of carrying a concealed weapon, D.C.Code § 22–3204, but he does not appeal from that conviction.

could not have concluded beyond a reasonable doubt that he had not acted in self-defense.[2]

While appellant was visiting at the home of friends, the Woodsons, one Joe Canty, who inhabited an apartment in the home, was chased there by a group of five men with whom he had had an altercation on the street. The group remained in front of the home, and Woodson came out to talk with them, apparently to send them away. An argument between the five and Woodson, two of his daughters, and Canty ensued, with Woodson brandishing a hatchet and one of the group carrying a jack handle. At no time did any of the group enter the Woodson house or move up to the porch. Appellant left this scene, went to his nearby apartment, and returned with a fully loaded .25 caliber pistol which he kept there. There was testimony that as appellant approached the porch of the Woodson house, he passed in front of three of the five men who had gathered there, and made some kind of insulting comment to them. There was also testimony to suggest that the men did not rush the appellant until he had brought forth his gun, or fired a shot into the ground. Appellant, and other witnesses, testified that the group began to move toward him first, that he then pulled his gun and fired a warning shot, and that when they didn't stop he began to shoot at them. Two of his attackers were killed, and a third was wounded. At this point, the other two stopped their advance, and defendant ran back into the Woodson house.

Appellant testified that he did not know any of the five personally, but that he knew one of them was the boy friend of the girl with whom he had spent the previous night, and that he believed this decedent had manhandled her earlier that morning and might have done harm to him if he knew who appellant was.

The jury could have concluded that the defendant was doing more than simply protecting himself against an unjustified attack. Defendant had reason to dislike and fear one of the five men; the altercation in front of the Woodson house involved friends of his; he left an apparently safe haven to arm himself and return to the scene; he inflamed the situation with his words to the men gathered there, even though he could have returned silently to the safety of the Woodson porch. Finally, the jury could have credited the testimony of those eyewitnesses who suggested that defendant had fired or brandished his gun before he was rushed.

These facts could have led the jury to conclude that defendant returned to the scene to stir up further trouble, if not actually to kill anyone, and that his actions instigated the men into rushing him. Self-defense may not be claimed by one who deliberately places himself in a position where he has reason to believe "his presence * * * would provoke trouble." Laney v. United States, 54 App.D.C. 56, 58, 294 F. 412, 414 (1923). Appellant cites numerous cases which hold that a defendant may claim self-defense if he arms himself in order to proceed upon his normal activities, even if he realizes that danger may await him. However, we think that the jury could have found that the course of action defendant here followed was for an unlawful purpose.

A defendant is not entitled to a directed judgment of acquittal if the trial judge determines that "upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). The trial judge did not err in his refusal to direct an acquittal.

Affirmed.

**2.** We do not consider appellant's other claim that the trial court incorrectly excluded evidence of prior acts of violence committed by one of the decedents, since this evidence was merely cumulative.