Robert W. BROWN, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 91–CF–777.

District of Columbia Court of Appeals.

Argued Nov. 5, 1992.
Decided Nov. 23, 1992.*

Lee H. Karlin, Washington, DC, appointed by the court, for appellant.

Mary–Patrice Brown, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty.,

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment on November 23, 1992. It is now being published pursuant to the court's order granting appellee's motion to publish.

and John R. Fisher, Elizabeth Trosman, and N. Paul Patterson, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before FERREN and TERRY, Associate Judges, and KERN, Senior Judge.

PER CURIAM:

A jury convicted appellant of voluntary manslaughter, D.C.Code §§ 22–2405, –3202, –105 (1989 Repl.), upon evidence that appellant aided and abetted his codefendant[1] in shooting to death the victim in his auto on April 13, 1989, at approximately 3:30 a.m. We affirm.

The record reflects that on the evening of April 12, 1989, appellant rented a car and drove around the neighborhood into the early morning hours of April 13, 1989 with three other friends. While driving to 1340 Bryant Street, N.E., where appellant's aunt lived, they noticed another auto double-parked. The victim called out from this auto to a female passenger in appellant's auto.

At first, appellant and his companions could not identify the man who then proceeded to follow appellant's auto. Appellant suggested that his codefendant enter his aunt's house to obtain a gun. One of the passengers in appellant's auto then informed the other three that he recognized the person (the victim) in the second auto. At this point appellant stopped and one of the passengers and the codefendant alighted and approached the victim and questioned him as to why he was following appellant's auto. The passenger saw the victim reach into his glove compartment and place into his sweatshirt pocket an object which the passenger did not see but suspected was a gun.

Appellant and his codefendant, who had since returned to appellant's auto, began devising a plan in which the codefendant would enter the home of appellant's aunt where appellant kept an Uzi pistol locked in a closet safe. Appellant would continue driving around the neighborhood and lure the victim into following. After appellant's codefendant left the auto, appellant circled the block and then stopped his auto in front of 1340 Bryant Street, N.E. The victim in his auto pulled up approximately ten feet behind appellant's auto.

The codefendant ran from the home of appellant's aunt up to the passenger side of the victim's auto and began shooting. The victim attempted to escape this gunfire by crawling out of the driver's side window. At this point, the codefendant walked around to the driver's side door and continued shooting at the victim's head. The codefendant then returned to appellant's auto, and they drove off, leaving the victim mortally wounded.

At the subsequent trial, appellant contends that the trial court committed reversible error in two respects: first, in refusing to allow appellant to raise the defense of self-defense,[2] and second, in declining to instruct the jury on the lesser-included offense of involuntary manslaughter.[3] We reject these contentions and affirm the conviction.

I.

▮ " 'As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.' " *Adams v. United States*, 558 A.2d 348, 349 (D.C. 1989) (quoting *Mathews v. United States*,

---

1. Prior to trial, appellant's codefendant pleaded guilty to murder in the second degree.

2. The court did instruct the jury that in its determination it might take into account that appellant Brown was entitled to mitigation. The mitigation principle recognizes the " 'weaknesses' or 'infirmity' of human nature" in which "[l]egally recognized mitigating factors serve to extenuate or 'dampen' the otherwise malicious nature of the perpetrator's mental state, and

thus serve as a bar to a conviction for murder." *Comber v. United States*, 584 A.2d 26, 41–42 (D.C.1990) (citations omitted).

3. Appellant was indicted for first-degree murder, D.C.Code § 22–2401 (1989 Repl.), and the court charged the jury that it might find appellant guilty upon the lesser-included offense of murder in the second degree, as well as voluntary manslaughter.

485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988)). In determining whether a self-defense instruction was properly denied, the evidence must be reviewed in the light most favorable to the defendant. *Reid v. United States,* 581 A.2d 359, 367 (D.C.1990) (citing *Adams, supra,* 558 A.2d at 349). Finally, the defendant must have honestly and reasonably believed that he was in imminent danger of death or serious bodily harm in light of the surrounding circumstances. *United States v. Peterson,* 157 U.S.App.D.C. 219, 227, 483 F.2d 1222, 1230, *cert. denied,* 414 U.S. 1007, 94 S.Ct. 367, 38 L.Ed.2d 244 (1973); *Graves v. United States,* 554 A.2d 1145, 1147–48 (D.C. 1989). The jury is not required to engage in a " 'bizarre reconstruction' of the evidence" to arrive at such a conclusion. *Adams, supra,* 558 A.2d at 349 (quoting *Wood v. United States,* 472 A.2d 408, 410 (D.C.1984)).

■ When a self-defense claim is raised, the trial judge must first decide, as a matter of law, if the evidence in the record supports defendant's theory of self-defense. *See Bowler v. United States,* 480 A.2d 678, 682 n. 8 (D.C.1984). Accordingly, "the trial court [is] in the best position from which to reflect upon the evidence and assess whether a fair inference of self-defense was raised." *Id.* Viewing the evidence presented at trial in the light most favorable to appellant, we conclude that the trial court properly determined that a reasonable juror could not conclude that appellant acted in self-defense.

■ In order to invoke a legitimate claim of self-defense, a defendant must satisfy the following conditions: (1) there was an actual or apparent threat; (2) the threat was unlawful and immediate; (3) the defendant honestly and reasonably believed that he was in imminent danger of death or serious bodily harm; and (4) the defendant's response was necessary to save himself from the danger. *United States v. Peterson, supra,* 157 U.S.App.D.C. at 226–27, 483 F.2d at 1229–30; *McPhaul v. United States,* 452 A.2d 371, 373 (D.C.1982).

Appellant relies upon evidence that while he, the codefendant and others were in his auto, the victim, in another auto, yelled out to one of their passengers and asked that she alight and come to him; that the victim wore the hood of his sweatshirt on his head so as to shield his features; that the victim thereafter drove his auto behind appellant's auto through the desolate streets at 3:00 in the early morning for a period of five to fifteen minutes for a number of blocks; that a passenger in appellant's auto saw the victim reach into his glove compartment and place into the front pouch of his sweatshirt an object which the passenger did not see but suspected was a gun; and finally, that the police later found a .25 caliber pistol in the victim's front pocket after his death.

The record in the instant case also reflects, however, that the victim made no threat, actual or apparent, prior to being shot to death by the codefendant—aided and abetted by appellant. Appellant himself acknowledged in a recorded statement to the police that the victim never said anything threatening to either the appellant or to his codefendant. There was no evidence that appellant or any of the occupants in his auto *actually* saw the victim with a gun. At no time did the victim exit his auto or drive it so as to block the path of appellant's auto. The victim, at the time the codefendant shot him to death, had stopped his auto approximately ten feet behind the auto of appellant, who had parked in front of his aunt's home.

■ The trial court under these circumstances properly concluded that appellant had many options, such as entering his aunt's house, remaining in his auto and driving directly home, or telephoning the police. A defendant cannot successfully claim self-defense when "he left an apparently safe haven to arm himself and return to the scene." *Rowe v. United States,* 125 U.S.App.D.C. 218, 219, 370 F.2d 240, 241 (1966). Appellant cannot raise a legitimate self-defense claim when he went out of his way to look for trouble. *Nowlin v. United States,* 382 A.2d 9, 14 n. 7 (D.C.1978) (citation omitted). In sum, the evidence to which appellant points does not demonstrate that he was acting in response to

imminent peril to protect himself from immediate harm when he directed the codefendant to enter a house, obtain an Uzi pistol and return to the street where the victim was parked inside his auto.

## II.

 As to the refusal by the trial court to give the jury an instruction on *both* voluntary and involuntary manslaughter,[4] appellant failed to set forth at trial an evidentiary basis demonstrating that he was unaware of the risk of harm, the essence of an involuntary manslaughter claim, by providing his codefendant access to an Uzi pistol at the time of this incident. *See Comber, supra* note 2, 584 A.2d at 49 (" '[i]f he is *not aware* ... and he should have been aware, the crime is involuntary manslaughter' ") (quoting *United States v. Bradford,* 344 A.2d 208, 215 n. 22 (D.C. 1975) (emphasis supplied)).

We note that the basis of appellant's self-defense claim was that he had provided his codefendant with access to an Uzi pistol for the purpose of protecting himself from any future peril. Such conduct constituted an affirmative act demonstrating appellant's awareness of the potential danger in the situation he faced.[5] Appellant cannot argue that he was aware of the danger of his conduct for the purpose of self-defense and then turn around and assert he was unaware of the potential danger he had created by his conduct for the purpose of asserting he was entitled to an involuntary manslaughter charge.

Thus, the trial court committed no reversible error in denying appellant's request for an involuntary manslaughter instruction under the circumstances here.

To have done so would have forced the jury to assume facts not in evidence and to draw irrational inferences. *Rouse v. United States,* 402 A.2d 1218, 1221 (D.C.1979); *Rease v. United States,* 403 A.2d 322, 329 (D.C.1979). Accordingly, the judgment must be and is

*Affirmed.*

the pistol, and thus he did not expect the codefendant actually to shoot the victim. However, there was evidence of considerable talk between appellant and his codefendant prior to the shooting about luring the victim to follow appellant's auto while his codefendant ran into the house to obtain the Uzi pistol he thereafter used to shoot to death the victim. Under these circumstances, the trial court correctly denied the request for the jury instruction appellant sought.

---

4. This court has noted:
   [I]n all voluntary manslaughters, the perpetrator acts with a state of mind which, but for the presence of legally recognized mitigating circumstances, would constitute malice aforethought ... [a]ll involuntary manslaughters, in contrast, are killings in which the perpetrator's state of mind, without any consideration of ... mitigation, would not constitute malice aforethought.
   *Comber, supra* note 2, 584 A.2d at 37.

5. Appellant did contend that his codefendant "was faking" when he exited the auto to obtain