Theodore SWANN III, Appellant,

v.

UNITED STATES, Appellee.

No. 91–CF–1141.

District of Columbia Court of Appeals.

Argued Oct. 5, 1993.
Decided Oct. 11, 1994.

The principal issue on appeal is whether appellant was entitled to a voluntary manslaughter instruction on a theory of imperfect self-defense. We hold that he was entitled to the requested instruction, but we further hold that the failure to give the requested instruction provides no ground for a new trial on the facts here where appellant was convicted of first-degree premeditated murder.

Stephanie Harrison, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Chrisellen R. Kolb, Asst. U.S. Atty., with whom J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, and John R. Fisher, Elizabeth Trosman and N. Paul Patterson, Asst. U.S. Attys., were on the brief, for appellee.

Before STEADMAN and SCHWELB,[*] Associate Judges, and MACK, Senior Judge.

STEADMAN, Associate Judge:

This case arises out of a basketball court dispute between appellant, Theodore Swann, and the decedent, Steven Crawford. Appellant testified that he thought Crawford was about to draw a gun on him, so he drew first and shot at Crawford, killing him. A self-defense instruction was given, but the trial court refused to instruct the jury on voluntary manslaughter under a theory of imperfect self defense. Appellant was convicted of first-degree premeditated murder.

## I.

In early March of 1988, at about four in the afternoon, Crawford and two friends drove to a basketball court to shoot baskets. Appellant arrived soon thereafter, also accompanied by two friends. The two groups watched the basketball game already underway and shot baskets when the game was at the other end of the court.

There was conflicting testimony as to how the argument between Crawford and appellant originated and the progress of events thereafter. Appellant's version was as follows. Appellant was bouncing a ball which Crawford "tried to penetrate," causing the ball to hit appellant in the stomach, where he had recently been stabbed, and then to hit his foot.[1] Crawford told appellant to get off the court, and the two started to argue.[2] As appellant walked past Crawford, Crawford said, "You think you stabbed up now, just watch."[3] Then Crawford put his hands to his side and appeared to be reaching for his back pocket.[4] Appellant had seen a bulge in Crawford's pocket and thought that Crawford was retrieving a gun in order to kill him.

---

[*] Former Chief Judge ROGERS was a member of the division that heard oral argument in this case. After her departure from the court, Associate Judge SCHWELB was selected by lot to replace her.

1. One government witness testified that as the groups were shooting baskets, Crawford shot a basketball which landed on the ground, "taking a bad hop," and then striking appellant's foot. Another witness for the government testified that after Crawford made a shot, appellant grabbed the ball. Crawford smacked the ball from appellant and the ball hit appellant's foot.

2. One government witness testified that appellant got upset, and Crawford and appellant began bickering about appellant's sore foot. Then appellant sought an apology from Crawford.

3. The government witnesses testified to a different version of events. According to them, when Crawford recognized that the fight was getting more "serious," he moved to the other side of the basketball court and leaned against a pole, with his friends at his side. Appellant walked around the basketball court, watching Crawford. Appellant was "running his mouth," and fumbling with his clothes. One witness testified that appellant said Crawford had smacked the ball out of his hands, to which Crawford responded, "Oh yeah. I'll smack the ball out your hands again if you come over here."

4. None of the government witnesses saw Crawford reach for his back pocket.

Appellant then pulled a gun from his waistband and shot Crawford twice in the head.[5]

Appellant asserted that he had a number of reasons for believing that Crawford was going to kill him: (1) appellant had a heightened sense of fear since the stabbing and thus carried the gun to the basketball court because he was afraid of retaliation from his previous attackers; (2) Crawford alluded to appellant's previous stabbing by saying, "you think you stabbed up now, just watch;" and (3) appellant had heard that Crawford had killed someone with a gun.

## II.

We turn to the issue whether the trial court erred in refusing to instruct on voluntary manslaughter under a theory of imperfect self-defense.

### A.

■ The standards for an acquittal on the ground of self-defense in a homicide case are exacting. First, the defendant must have an actual belief both that he or she is in imminent danger of serious bodily harm or death and in the need to use deadly force in order to save himself or herself. Second, in both cases, in addition to such an actual belief, the defendant's belief must be objectively reasonable.[6] *Brown v. United States,* 619 A.2d 1180, 1182 (D.C.1992) (per curiam); *United States v. Peterson,* 157 U.S.App.D.C. 219, 226–27, 483 F.2d 1222, 1229–30, *cert. denied,* 414 U.S. 1007, 94 S.Ct. 367, 38 L.Ed.2d 244 (1973); *see* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Nos. 5.12, 5.13 (4th ed. 1993).[7] A problem arises, however, where the jury may con-

clude from the evidence that the defendant's belief that he was in imminent danger and that he had to use deadly force to repel that danger was in fact actually and honestly held but was in one or both respects objectively unreasonable. It is in such circumstances that the issue arises whether a defendant is entitled to an instruction on the law of voluntary manslaughter under the so-called "imperfect self-defense" doctrine. That is appellant's claim here.

In *Comber, supra* note 6, the en banc court had occasion to explore at some length the basic concepts underlying the crime of voluntary manslaughter. "[I]n all voluntary manslaughters, the perpetrator acts with a state of mind which, but for the presence of legally recognized mitigating circumstances, would constitute malice aforethought, as the phrase has been defined for purposes of second-degree murder." 584 A.2d at 37. On the other hand, a defendant is not guilty of any crime at all if he kills with "justification or excuse."[8] *Id.* at 40–41. In particular, as relevant here, "even an intentional killing, if it comports with legally accepted notions of self-defense, is not malicious; it is excused and accordingly no crime at all." *Id.* at 41 (citation omitted). "The absence of justification, excuse, or mitigation is thus an essential component of malice, and in turn of second-degree murder, on which the government bears the ultimate burden of persuasion." *Id.*

■ The question then becomes what are legally recognized mitigating circumstances that can justify a reduction from second-degree murder to voluntary manslaughter.

5. There was conflicting testimony as to whether the appellant walked toward Crawford, after the first shot, and then shot him a second time. Two government witnesses testified that appellant stepped forward and fired the second shot. Two government witnesses and the appellant testified that he shot Crawford twice but the shots were in very rapid succession.

6. Once there is sufficient evidence to justify a self-defense instruction, the burden is on the government to disprove self-defense, by meeting its burden of proof negating the defendant's subjective actual belief or objective reasonableness. *Comber v. United States,* 584 A.2d 26, 41, 42 n. 19

(D.C.1990) (en banc); *Davis v. United States,* 510 A.2d 1051, 1053 (D.C.1986) (per curiam).

7. Even in such circumstances a defendant cannot claim self-defense if "the defendant was the aggressor, or if s/he provoked the conflict upon himself/herself." CRIMINAL JURY INSTRUCTIONS, *supra,* No. 5.16.

8. As *Comber* points out, the distinction between the two concepts can become a bit murky. Common examples of justified killings are those in warfare or of criminals sentenced to death. Excusable homicides are normally those in self-defense. 584 A.2d at 40 n. 16.

The "mitigation principle is predicated on the legal system's recognition of the 'weaknesses' or 'infirmity' of human nature," and "[l]egally recognized mitigating factors serve to extenuate or 'dampen[ ]' the otherwise malicious nature of the perpetrator's mental state." *Id.* at 41 (citing *United States v. Bradford,* 344 A.2d 208, 214–15 (D.C.1975)). In *Comber,* we noted that "such mitigating circumstances most frequently arise 'where the killer has been provoked or is acting in the heat of passion.'" *Id.* at 41 (quoting *Bradford, supra,* 344 A.2d at 215). However, we noted, mitigating circumstances may also be found in other circumstances, such as "when excessive force is used in self-defense" and "[a] killing is committed in the mistaken belief that one may be in mortal danger." *Id.* at 41 (quoting *Logan v. United States,* 483 A.2d 664, 671 (D.C.1984)). Since a belief that is both actually held and objectively reasonable is a complete exoneration from a charge of homicide, it seems indisputable in light of the foregoing authorities that if so believed by the jury, a defendant's actual belief both in the presence of danger and the need to resort to force, even if one or both beliefs be objectively unreasonable, constitutes a legally sufficient mitigating factor to warrant a finding of voluntary manslaughter rather than second-degree murder.[9]

**B.**

The government does not take serious issue with the foregoing propositions in the abstract. It asserts, nonetheless, that appellant was not entitled to an instruction on imperfect self-defense manslaughter on the facts here. Its principal arguments invoke three distinct grounds.[10]

First, the government argues that the claim of imperfect self-defense should be analyzed under the "adequate provocation" prong of voluntary manslaughter. It notes that in *Comber,* we said that a voluntary manslaughter instruction is justified "where the killer has been provoked or is acting in the heat of passion, with the latter including fear, resentment and terror, as well as rage and anger." *Comber, supra* note 6, 584 A.2d at 41 (quoting *Bradford, supra,* 344 A.2d at 215). Focusing upon the words "fear" and "terror," the government argues that the "provocation" here was inadequate as a matter of law.

■ As we understand it, this "provocation" argument focuses upon the requirement in a true self-defense claim that the defendant actually and *reasonably* believes that his life is in peril. Because the presence of adequate provocation in mitigation analysis to reduce second-degree murder to manslaughter is based solely upon an *objective* analysis of the factual situation, *see* CRIMINAL JURY INSTRUCTIONS, *supra,* Nos. 4.18, 4.19, 4.20, 4.21 ("adequate provocation if his/her action is provoked by conduct that would

9. These principles are recognized in the standard instruction relating to mitigating circumstances as they apply to imperfect self-defense:

> Mitigating circumstances also exist where a person honestly but unreasonably believes that s/he is acting in self-defense. This may occur when s/he honestly but unreasonably believes that s/he is in danger of serious bodily injury or when s/he honestly but unreasonably believes that the force s/he uses is necessary to defend him/herself.

CRIMINAL JURY INSTRUCTIONS, *supra,* No. 4.21. A possible ambiguity in this instruction is that in order to mitigate, the defendant must honestly believe *both* in the danger and in the necessary force to defend.

10. The government also argues that the reasonableness requirement of self-defense persists into voluntary manslaughter, asserting that the imperfect self-defense doctrine does not apply where the defendant's belief as to the need to defend is unreasonable. The government finds support for this argument in North Carolina, *see,*

*e.g., State v. McKoy,* 332 N.C. 639, 422 S.E.2d 713, 716 (1992), but acknowledges that "other jurisdictions have not adopted this formulation." We can see no basis for such an analysis under our precedents. On the contrary, a defendant who has an actual and objectively reasonable belief (on the facts as he reasonably perceives them) that his life is in danger and that he must act as he does, has met the requirements for self-defense, even if it turns out that in actuality the defendant was mistaken. *Fersner v. United States,* 482 A.2d 387, 391 (D.C.1984); *see* CRIMINAL JURY INSTRUCTIONS, *supra,* Nos. 5.12, 5.14.

The government also challenges appellant's right to any self-defense instruction at all. We need not decide this issue because even if appellant's belief in self-defense was unreasonable as a matter of law, the jury could have concluded that he actually believed in the need for self-defense and hence find him guilty of voluntary manslaughter. See Part C, *infra.*

cause an ordinary, reasonable person in the heat of the moment to lose his/her self-control"); 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 7.10(b)(10) (2d ed. 1986), this same approach, it is said, should be used where the issue arises in the context of an imperfect self-defense claim.

While this argument is not without force, we think that an imperfect self-defense claim must be viewed through a different prism. Unlike other aspects of provocation, which can only reduce a homicide to manslaughter, a state of mind arising out of a self-defense situation justifies outright exoneration if reasonable. Because the *subjective* state of mind required for an imperfect self-defense claim is identical to that required for a true self-defense claim, we can find in the controlling authority no suggestion that an actual, albeit unreasonable, belief that one's life is in danger cannot serve as a mitigating factor justifying a voluntary manslaughter instruction where also coupled with an actual belief that the force used was necessary in self-defense. Thus, however the emotions of fear and terror unrelated to self-defense may relate to mitigation of second-degree murder where the killing was provoked or the defendant acted in the heat of passion, we think that analysis cannot be controlling on the distinct issue of a killing committed in the actual but unreasonable belief that the defendant is in mortal danger. While fear and terror may be a consequence of that situation, the motivation for the killing stems from the actual, albeit unreasonable, perception of imminent danger to one's life, and the mitigation issue where a self-defense claim is involved is measured by the actual presence of *that* state of mind.

Second, addressing the other prong of self-defense, the government argues that even where a defendant has an actual but unreasonable belief that his life is in danger, he cannot invoke the imperfect self-defense doctrine if in response to that belief, he uses excessive force, even if he actually believes that the force used was necessary to save his life. In other words, in the government's view, the use of objectively excessive force constitutes murder even where the defendant has the actual but unreasonable belief that his life is in danger and that the force he uses is necessary to preserve it.

■ Again, we see no basis for such a limitation on the doctrine of imperfect self-defense in our case law. As *Comber* indicates, relying upon previous authority, mitigation to reduce second-degree murder to voluntary manslaughter may arise "when excessive force is used in self-defense or in defense of another." *Comber, supra* note 6, 584 A.2d at 41 (quoting *Logan, supra,* 483 A.2d at 671). If the concept of mitigation is to reflect a state of mind less heinous than that required for second-degree murder, precedent demonstrates that state of mind is sufficiently manifested if a defendant has an actual if erroneous belief that the amount of force used was necessary to preserve one's life, where coupled with an actual (but perhaps also unreasonable) belief that one's life is indeed in danger.[11] To repeat, the subjective frame of mind that is required for imperfect self-defense is identical to that present in true self-defense, and that frame of mind, sufficient to result in an acquittal if objectively reasonable, should be sufficient to meet the mitigation standard required to reduce

11. Taking the two arguments together, the government's position in substance seems to be that two elements of unreasonableness—belief in the danger and the amount of force necessary to resist it—puts too great a strain upon the mitigation concept. The government cites several cases for the proposition that imperfect self-defense manslaughter is not appropriate where the defendant both unreasonably believed himself to be in mortal danger and responded with excessive force. *See Ross v. State,* 61 Wis.2d 160, 211 N.W.2d 827, 830 (1973); *Dykes v. State,* 319 Md. 206, 571 A.2d 1251, 1255 (1990); *State v. Faulkner,* 301 Md. 482, 483 A.2d 759, 766 (1984).

As indicated, we do not find this argument to be persuasive, since the defendant's subjective state of mind is nonetheless identical to that held by a defendant entitled to an outright acquittal if reasonable in both respects. If any objection should lie to this thesis, it presumably is based upon considerations of proof. A subjective frame of mind can only be determined by various objective factors, and the absence of reasonableness may well cast into doubt the presence of subjective good faith. But juries in a myriad of situations are called upon to make just such judgments of actual mental state.

second-degree murder to voluntary manslaughter.

■ Third, the government argues that appellant has forfeited his right to any imperfect self-defense claim because he voluntarily placed himself in a position likely to provoke trouble. It is, of course, true that self-defense may not be claimed by one who "was the aggressor, or ... provoked the conflict upon himself/herself." CRIMINAL JURY INSTRUCTIONS, *supra*, No. 5.16; *see Rowe v. United States*, 125 U.S.App.D.C. 218, 219, 370 F.2d 240, 241 (1966) (per curiam) (quoting *Laney v. United States*, 54 App.D.C. 56, 58, 294 F. 412, 414 (1923)); *Nowlin v. United States*, 382 A.2d 9, 14 n. 7 (D.C.1978). However, whether a person has lost his right to claim self-defense in this manner is usually a jury question, as we think it was here. *See Brown, supra,* 619 A.2d at 1182; *Rowe, supra,* 125 U.S.App.D.C. at 219, 370 F.2d at 241; *Nowlin, supra,* 382 A.2d at 14 n. 7.

■ More importantly, we do not understand that such a defendant sacrifices not only the right to a true self-defense acquittal but to a voluntary manslaughter mitigation as well. On the contrary, one of the recognized circumstances in which imperfect self-defense may be asserted is where the defendant plays such a part in bringing on the difficulty. 2 LAFAVE & SCOTT, § 7.11(a) n. 4; *see Wallace v. United States*, 162 U.S. 466, 471, 16 S.Ct. 859, 861, 40 L.Ed. 1039 (1896); *Faulkner, supra* note 11, 483 A.2d at 762–63; *Reed v. State*, 11 Tex.App. 509 (Tex.Ct.App. 1892). As with the government's prior arguments, we think that its position here does not sufficiently take into account the mitigating factor on the malice element of murder presented by the defendant's true subjective state of mind, identical with the subjective state of mind which permits complete exoneration where the other elements of true self-defense are met.

## C.

■ "As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Bostick v. United States*, 605 A.2d 916, 917 (D.C.1992) (quoting *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988)); *Adams v. United States*, 558 A.2d 348, 349 (D.C.1989) (same). This court examines the evidence in the light most favorable to the defendant when reviewing the denial of a requested defense instruction. *Brown, supra,* 619 A.2d at 1182; *Frost v. United States*, 618 A.2d 653, 662 n. 18 (D.C.1992). We think that on the facts here, a reasonable jury could have found that appellant had a subjective actual belief that his life was in danger and a like belief that he had to react with the force that he did, even though such beliefs were objectively unreasonable. Accordingly, the requested instruction on imperfect self-defense voluntary manslaughter should have been given, and the trial court erred in not doing so.

## III.

■ We turn now to the question whether the fact that the appellant was convicted of first-degree premeditated murder renders the trial court's instructional error harmless.[12] The issue, in substance, is whether, given the factual determination necessarily underlying the jury's verdict of first-

12. The error here does not reach to the constitutional dimension found in *Beck v. Alabama*, 447 U.S. 625, 637–38, 100 S.Ct. 2382, 2389–90, 65 L.Ed.2d 392 (1980), where the failure to give a lesser included offense instruction as an alternative to a capital crime was found to violate the Due Process Clause. *See Schad v. Arizona*, 501 U.S. 624, 645–48, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (holding that due process, as articulated in *Beck*, does not require an instruction on every lesser included offense in a capital case if the jury is presented with more than just the two options of capital murder or innocence). Thus, the appropriate test for harmless error in this case would appear to be whether one can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," as articulated in *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). In any event, we would also find the error harmless under the constitutional test of *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

degree murder and its consequent eschewal of the lesser-included offense of second-degree murder on which it was instructed, the jury could rationally have acquitted on both offenses and found appellant guilty of the even lesser-included offense of voluntary manslaughter if properly instructed. *Nelson v. United States,* 601 A.2d 582, 595 (D.C. 1991); *see Stewart v. United States,* 116 U.S.App.D.C. 411, 324 F.2d 443 (1963) (per curiam). We can find no such possibility in the circumstances here.[13]

The jury was instructed on both first-degree murder and second-degree murder, as well as self-defense.[14] In finding appellant guilty of first-degree murder, the jury necessarily found that he shot with actual intent to kill the victim and that he did so with premeditation and deliberation, the elements that distinguish first-degree murder from second-degree murder. As the trial court specifically instructed the jury, if it harbored reasonable doubt as to whether the appellant had so acted, "you must find him not guilty of murder in the first degree."

The trial court defined both premeditation and deliberation for the jury in the terms of the then standard instruction 4.21. In particular, with respect to deliberation, the trial court instructed the jury:

> [D]eliberation involves giving consideration and reflection upon a preconceived design to kill. In other words, turning it over in the mind, giving it a second thought. Although premeditation, which is the formation of a design to kill[,] may be instantaneous[,] as [quick] as thought itself, it is

necessary that an appreciable time elapse between the formation of the design and the fatal act within which there is, in fact, deliberation.... If one forming an intent to kill does not act instantly, but pauses and actually gives second thought and consideration to the intended act, he has in fact deliberated. It is the fact of deliberation that is essential, rather than the length of time that it may have continued.

Given such an instruction, no jury which believed appellant's testimony that he had acted with a good-faith belief that his life was in danger and instantly reacted accordingly could have found on the evidence here that he killed the victim with deliberation, that is, with "second thought and consideration." Appellant testified that he did not run away because he "couldn't think. It happened real fast." Appellant stated that when Crawford "made the threat I just pulled out my gun and I shot him," that he pulled out the gun in less than a second and without a struggle, and that he did not pause between firing the two shots. On the precise facts of this case, premeditation and deliberation cannot reasonably coexist with a finding that the killing was an immediate response to mortal peril. We think it plain in these circumstances that a jury who believed any part of appellant's story that he acted in self-defense, even if unreasonably, would at most have convicted appellant of second-degree rather than first-degree murder.[15]

Furthermore, the jury was well aware of the general role of mitigating or even justify-

**13.** We do not understand our decisions dealing with failure to instruct on a defendant's theory of the case, cited by the dissent, to establish an automatic *per se* rule for reversal; indeed, *Gray v. United States,* 549 A.2d 347, 351 (D.C.1988), a case in which the court failed to instruct on the alibi defense, suggests the contrary. It is undoubtedly true that in such cases of failure to instruct, harmless error will be found only in unusual circumstances, such as those in the present case. *Cf. Schad v. Arizona, supra,* 501 U.S. at 647–48, 111 S.Ct. at 2505 ("To accept the contention advanced by petitioner and the dissent, we would have to assume that a jury unconvinced that petitioner was guilty of either capital or second-degree murder, but loath to acquit him completely (because it was convinced he was guilty of robbery [a still lesser-included offense on which no instruction was given] ), might

choose capital murder rather than second-degree murder as its means of keeping him off the streets. Because we can see no basis to assume such irrationality, we are satisfied that the second-degree murder instruction in this case sufficed to ensure the [first-degree murder] verdict's reliability.")

**14.** The trial court followed in substance the then-extant jury instructions for premeditated first-degree and second-degree murder. CRIMINAL JURY INSTRUCTIONS, *supra,* Nos. 4.21 and 4.23.

**15.** For this reason, we are unpersuaded by appellant's arguments that the instructions did not require the government to prove absence of mitigation as an element of first-degree murder and that premeditation and deliberation are unrelated to the absence of mitigation.

ing factors arising out of appellant's self-defense claim. The jury was, of course, given full instructions on self-defense. Also, while no instruction on voluntary manslaughter was given, the jury as part of the instruction on second-degree murder was told:

> To establish the third element of the offense, the government must prove beyond a reasonable doubt that the defendant did not injure the deceased in the heat of passion caused by adequate provocation. Now, heat of passion includes such emotions as rage, resentment, anger, terror and fear. Heat of passion may be produced by fear as well as by rage.

A jury instructed that it could not convict appellant of even second-degree murder if it was not satisfied beyond a reasonable doubt that he did not act out of "terror and fear" surely would not have convicted appellant of first-degree murder with any semblance of belief in appellant's claimed self-defense state of mind.[16]

Prior cases in this jurisdiction binding upon us have evinced recognition, albeit in the context of a holding of evidentiary insufficiency, that failure to instruct on a lesser-included offense may be harmless if the jury rejected other lesser-included offenses supported by the evidence. In *Belton v. United States*, 127 U.S.App.D.C. 201, 208, 382 F.2d 150, 157 (1967), the jury was instructed on both first-degree and second-degree murder but was not instructed on voluntary manslaughter as appellant requested. *Id.* at 202, 382 F.2d at 151. The jury convicted appellant of first-degree murder. Although the trial court would have been "well advised to give the manslaughter instruction," had it been apprised of the defense theory, the evidence was not such that it was error to refuse the instruction in the absence of such assistance from counsel. *Id.* at 207, 382 F.2d at 156. In addition to the obscurity of the defense theory, the court took note that "the

prejudice from failure to charge manslaughter is more remote in view of the failure of the jury even to bring the verdict down to second degree murder." *Id.* at 207–08 n. 16, 382 F.2d at 156–57 n. 16. The court later reiterated:

> In reaching our conclusion that there was no reversible error, we again emphasize that the jury's verdict went beyond second degree murder; this weakens any sense of prejudice from failure to charge manslaughter.

*Id.* at 208, 382 F.2d at 157.

We relied upon *Belton* in *Hurt v. United States*, 337 A.2d 215 (D.C.1975) (per curiam). There, we found that the evidence did not support the requested lesser-included instruction on voluntary manslaughter but went on to say: "In addition, the jury's verdict dissolves appellant's argument. By its finding of first degree murder, the jury implicitly acknowledged the existence of premeditation and deliberation which *cannot co-exist* with adequate provocation." *Id.* at 218–19 (emphasis added). We then quoted from *Belton*, including the portion indented above, and concluded that "we would not hold the failure to give such an instruction reversible error in the circumstances of this case." *Id.* at 219.

Similarly, in *Morgan v. United States*, 363 A.2d 999, 1002–03 (D.C.1976), *cert. denied*, 431 U.S. 919, 97 S.Ct. 2187, 53 L.Ed.2d 231 (1977), the trial court gave instructions on first-degree and second-degree murder but refused to instruct on voluntary manslaughter. The jury convicted appellant of first-degree murder. In addition to finding that the evidence did not support a manslaughter instruction, we noted:

> Significantly here, the jury went beyond a finding of malice and necessarily found as a fact that appellant had committed mur-

---

**16.** Indeed, although the trial court gave no instruction on voluntary manslaughter despite the foregoing instruction with respect to second-degree murder, *cf. Bostick, supra,* it did instruct the jury that if it was not satisfied that the defendant did not injure the deceased in the heat of passion caused by adequate provocation, then it must find appellant not guilty of second-degree murder.

Appellant did ask the trial court to include in the instructions on first-degree murder that the government had to prove beyond a reasonable doubt that the appellant did not act in self-defense or with any other reasonable justification or excuse. For the reasons discussed, we think that the instructions as given, taken as a whole, conveyed to the jury the responsibility of the government on the facts here.

der after premeditation. On this record we can say, without much in the way of speculation, that the jury would have ignored any instruction on manslaughter.

*Id.*, 363 A.2d at 1003 (citing *Belton, supra,* 127 U.S.App.D.C. at 208, 382 F.2d at 157). *See also Nelson, supra,* 601 A.2d at 595 ("we hold that the trial court's failure in this case to instruct on second-degree murder was harmless error because the jury, by finding [appellant] guilty of burglary, necessarily found that he had the requisite specific intent to steal [and thus was guilty of felony murder]").

Although the picture elsewhere is mixed, we find support for our analysis in several cases from other jurisdictions finding that any error in refusing to give one lesser-included offense is harmless if the jury verdict rejects other lesser-included offenses which could be supported by the evidence. In *State v. Russell Council Judge,* 308 N.C. 658, 303 S.E.2d 817, 821 (1983), the jury was instructed on first-degree and second-degree murder and self-defense and convicted appellant of first-degree murder. Without deciding whether it was error not to give the requested manslaughter instruction, the Supreme Court of North Carolina found that the trial court's refusal to so instruct on manslaughter was harmless because the jury had indicated its certainty of appellant's guilt of the greater offense by refusing the lesser-included offense which was available. *Id.* at 821–22. The court quoted *State v. Freeman,* 275 N.C. 662, 170 S.E.2d 461, 465 (1969), observing:

> A verdict of murder in the first degree shows clearly that the jurors were not coerced, for they had the right to convict in the second degree. That they did not indicates their certainty of his [appellant's]

guilt of the greater offense. The failure to instruct them that they could convict of manslaughter therefore could not have harmed the defendant.

Likewise, in *State v. Edwards,* 343 N.W.2d 269, 271 (Minn.1984), the jury convicted appellant of second-degree murder after being instructed on that offense, first-degree murder and the lesser-included offense of first-degree death-in-the-course-of-a-misdemeanor manslaughter. The court found that although it was error not to also instruct on second-degree culpably-negligent manslaughter, the jury's rejection of the other lesser offense supported a conclusion that the error was not prejudicial. *Id.* at 276. *See also, e.g., People v. Bartowsheski,* 661 P.2d 235, 242–43 (Colo.1983) (en banc) (jury instructed on first-degree and second-degree murder but not manslaughter; court found no evidence to support a manslaughter instruction but observed that the failure to instruct "in light of the jury's verdict for the most serious possible offense, does not comport with an inference of prejudice"); *State v. Atkins,* 681 S.W.2d 571, 577 (Tenn.Crim.App.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985) (because jury found appellant guilty of first-degree rather than second-degree murder, "it would be folly to speculate that the jury might have found him guilty of manslaughter. If there was error it was harmless.").[17]

We emphasize that our analysis does not encompass the position clearly rejected by *Keeble v. United States,* 412 U.S. 205, 212–13, 93 S.Ct. 1993, 1997–98, 36 L.Ed.2d 844 (1973), and *Moore v. United States,* 599 A.2d 1381, 1384–85 (D.C.1991), that any conviction of a greater offense necessarily renders the failure to instruct on a lesser-included of-

---

**17.** Care must be taken to distinguish cases where the jury was not instructed on at least one lesser-included offense that fit the evidence. Such cases are not apposite because the jury was not provided with any real alternative between conviction of the greater offense and acquittal. *See, e.g., State v. Bowens,* 108 N.J. 622, 532 A.2d 215, 222, 224–25 (1987) (prejudicial error to refuse to instruct on aggravated and reckless manslaughter where jury was instructed on murder, manslaughter in the heat of passion and justification based on self-defense and the evidence supported possibility of appellant overreacting to a threat);

*State v. Ellis,* 325 A.2d 772, 777 (Me.1974) (where appellant convicted of murder but sufficient evidence was presented to reach a verdict on involuntary manslaughter, omission of an instruction on that offense was prejudicial even though court instructed on voluntary manslaughter which was not supported by the evidence). We are aware of no case where the jury was instructed on a lesser-included offense, found the defendant guilty of a greater offense, and yet the court reversed on a *per se* basis for failure to give an even lesser lesser-included offense.

fense harmless error. In those cases the jury was presented only two options, conviction of the higher offense or acquittal, and it was impossible to "say that the availability of a third option —— ... —— could not have resulted in a different verdict." *Moore, supra*, 599 A.2d at 1385 (quoting *Keeble, supra*, 412 U.S. at 213, 93 S.Ct. at 1998.)[18] The jury was presented with no such dilemma here when it rejected second-degree murder and found first-degree premeditated murder instead. *Cf. Schad, supra* note 12, 501 U.S. at 646–47, 111 S.Ct. at 2504–05 (reliability of jury verdict not in question where "third option" available between capital murder and acquittal). Based on this distinction and the fact that appellant's mitigation claim "cannot coexist" with the jury's finding of premeditation on the facts in this case, *see Hurt, supra*, 337 A.2d at 219, we conclude that this is one of those unusual cases in which failure to instruct on a lesser-included offense may be deemed harmless.

*Affirmed.*

MACK, Senior Judge, dissenting:

Today the majority pays lip-service to an exacting standard of criminal law that is well-nigh axiomatic: "[W]hen a defendant requests an instruction on [a] theory of the case" that negates his guilt of the crime charged, and "that instruction is supported by 'any evidence, however weak,' an instruction stating the substance of the [defendant's theory] *must* be given." *Henderson v. United States*, 619 A.2d 16, 19 (D.C.1992) (quoting *Gethers v. United States*, 556 A.2d 201, 204 (D.C.1989) (emphasis in original) (quoting

*Gray v. United States*, 549 A.2d 347, 349 (D.C.1988))).

### I.

My colleagues recognize that the evidence in this case was such that appellant's request for a voluntary manslaughter instruction, under a theory of "imperfect self-defense," should have been granted, and that the trial court erred in denying that request.[1] They correctly reject the government's three-pronged argument that appellant was not entitled to an imperfect self-defense manslaughter instruction because (1) the claimed "provocation" by the deceased was inadequate as a matter of law, (2) the appellant used excessive force in defending himself (which I find most disturbing of all), and (3) the appellant voluntarily placed himself in a position likely to provoke trouble. They also correctly follow precedent in noting that an imperfect self-defense claim, as well as a self-defense claim, must be viewed through the prism of the state of mind (whether reasonable or unreasonable) of the accused. *Comber, supra*, 584 A.2d at 40–42; *Adams v. United States*, 558 A.2d 348 (D.C.1989). Thus quoting *Comber, supra*, they reiterate, " 'even an intentional killing, if it comports with legally accepted notions of self-defense, is not malicious; it is excused and accordingly no crime at all.' " Majority op. at 930 (quoting *Comber, supra*, 584 A.2d at 41 (citation omitted)). They conclude that "[s]ince a belief that is both actually held and objectively reasonable is a complete exoneration from a charge of homicide" it seems indisputable that "a defendant's actual belief both in the

18. Logically, of course, since juries are almost always presumed to follow instructions, *Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 1706, 95 L.Ed.2d 176 (1987), the jury's verdict of conviction of a greater offense instead of an acquittal could be argued to demonstrate that the jury necessarily would not have opted for the lesser-included offense if an instruction were given. As *Moore* and *Keeble* indicate, the concern is that with no intermediate option, a jury may against its better judgment opt to convict. Hence the distinction between such cases and the situation presented here, where a lesser-included option was available and rejected.

1. Trial counsel requested an "imperfect self-defense" manslaughter instruction (which, if ac-

cepted by the jury, negates the "malice" necessary to sustain a murder conviction) in reliance on our decision in *Comber v. United States*, 584 A.2d 26, 40–42 (D.C.1990) (en banc). The trial court, who aptly noted that "self-defense [is] a complete defense to whatever degree of homicide you are talking about," was inclined to give the manslaughter instruction on the imperfect self-defense theory. However, the prosecutor, apparently theorizing that where excessive force is involved a claim of provocation cannot negate the presence of malice, convinced the trial court not to give the manslaughter or "imperfect self-defense" instruction. The court did give a self-defense instruction after the instructions on first-degree and second-degree murder.

presence of danger and the need to resort to force, even if one or both beliefs be objectively unreasonable, constitutes a legally sufficient mitigating factor to warrant a finding of voluntary manslaughter rather than second-degree murder."[2] Majority op. at 931.

Having found error, the majority undertakes a harmless error analysis which is inappropriate for three reasons: (1) it is legally convoluted in its reliance on inapposite cases, (2) it reaches a conclusion contrary to established law, including the authorities relied upon, and (3) in the factual circumstances of this case, it amounts to appellate speculation.

## II.

This court has stated that "the trial court commits reversible error when it refuses to present adequately a defendant's theory of the defense." *Stack v. United States,* 519 A.2d 147, 154 (D.C.1986); *accord, West v. United States,* 604 A.2d 422, 428 (D.C.1992); *Gray, supra,* 549 A.2d at 349; *Levine v. United States,* 104 U.S.App.D.C. 281, 282–83, 261 F.2d 747, 748 (1958). The majority does not address this line of cases. Instead, it admittedly borrows its harmless error analysis from a line of insufficiency of evidence cases which are clearly distinguishable from the instant case in that defendants in those cases had no right to inclusion of the instruction that they claimed the trial court erroneously omitted. *See, e.g., Morgan v. United States,* 363 A.2d 999, 1002 (D.C.1976), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2187, 53 L.Ed.2d 231 (1977) (holding that requested manslaughter instruction was not erroneously denied where defendant presented "no evidence of provocation and no facts of provocation can be inferred which would have

given him a scintilla of a defense against murder"); *Belton v. United States,* 127 U.S.App.D.C. 201, 207–08, 382 F.2d 150, 156 (1967) (holding that requested manslaughter instruction was not erroneously denied where there was "no testimony" to support the theory underlying the instruction[3]).[4] These cases did not involve harmless error but rather no error; neither did they involve self-defense. In *Morgan* and *Belton,* there was not a scintilla of evidence to support requested instructions on manslaughter. In the instant case, where we have found that scintilla of evidence, and, consequently, have found error, we can gain no comfort from the *Belton* and *Morgan* cases.

By contrast, in *Gray, supra,* we held that the trial court erred in failing to give a defense-requested alibi instruction when it was warranted. Rejecting the government's assertion of harmlessness, we observed that while we need not adopt a *per se* rule that such failure could never be harmless, we found it difficult to imagine a case where such an error could possibly be harmless. 549 A.2d at 351.

## III.

In the circumstances of the instant case, like those of *Gray, supra,* we simply cannot use a jury's verdict to speculatively append the word "harmless" to a trial error. Thus, to the extent that I understand the reasoning of the majority, the error of the trial court (which it confirms) was harmless because the jury convicted appellant of first-degree premeditated murder after having been instructed on the lesser included offense of second-degree murder. This reasoning—that the

---

2. In view of the holding of *Comber,* I question whether the phrase "rather than second degree murder" should be rephrased as "rather than murder." *See* note 6, *infra.*

3. Further, the *Belton* court noted that trial counsel had failed to advance to the court any factual predicate for the requested instruction. The court went on to say that if trial counsel had advanced even the very tenuous theory in support of the instructions that was articulated for the first time on appeal, the trial court "would have been well advised to give the manslaughter instruction." 127 U.S.App.D.C. at 207, 382 F.2d at 156.

4. The majority's reliance on *Nelson v. United States,* 601 A.2d 582, 594–95 (D.C.1991) is also misguided. In *Nelson,* we held that the jury's finding of defendant's guilt on a burglary charge, established the mental state necessary for felony murder in spite of the fact that the court erred by refusing to give an instruction on the lesser included offense of second-degree murder. On the facts of the instant case, the jury's finding that appellant premeditated and deliberated says nothing about whether the jury would have found that the government had also proved that there were no mitigating circumstances, which is arguably an element of first-degree murder when imperfect self-defense manslaughter is a lesser included offense. *See* note 6, *infra.*

jury did not believe and thus would not have believed, even if properly instructed, that appellant killed in the belief that his life was in danger [5]—embraces a degree of layman's logic.

In the circumstances of this case, whether we focus on a layman's predilection, or the logic of law, this reasoning places the cart before the horse. I believe, on the facts of this case, a properly instructed jury should have been required to acquit of first-degree murder unless it found that the government had met its burden of disproving the evidence of the mitigating circumstance of imperfect self-defense (in addition to the justification of self-defense). *See Comber, supra,* 584 A.2d at 40–42 n. 17; *see also* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 14 (4th ed. 1993); [6] *cf. Harris v. United States,* 618 A.2d 140, 148 (D.C.1992) (government has burden of proving that defendant did not act in self-defense); *Speed v. United States,* 562 A.2d 124, 129 (D.C.1989) (same). Because the court did not inform the jury that the government was required to disprove the evidence of imperfect self-defense in the instant case, we cannot bolster our conclusion that the instructional error committed here was harmless by relying in any way on the jury's verdict. As appellant's counsel correctly notes, premeditation and

---

**5.** To buttress this theory of "belief" that premeditation and deliberation cannot reasonably exist with an immediate response to mortal peril, the majority points to two brief and insignificant utterances by appellant. The majority does not place these utterances in the context of its earlier recitation of appellant's "version" of the facts which include his prior injury, his fear, and provocation by a threatening victim—presumably the same version which has led us to conclude that the trial court erred in refusing to give the requested instruction.

Although we might conclude on the basis of its verdict that the jury rejected appellant's claim that he did not reflect before shooting the decedent, we cannot assume that the jury also would have rejected appellant's contention that he believed (albeit unreasonably) that he was in mortal danger, a factor that would be pertinent in determining whether he acted in imperfect self-defense. *See Comber, supra,* 584 A.2d at 41.

My colleagues postulate an additional conclusion they are confident in drawing from this erroneously instructed jury's verdict, stating

[a] jury instructed that it could not convict appellant of even second-degree murder if it was not satisfied beyond a reasonable doubt that [appellant] did not act out of "terror and fear" surely would not have convicted appellant of first-degree murder with any semblance of belief in appellant's claimed self-defense state of mind.

Majority op. at 935. This conclusion is by no means inescapable. To the contrary, if we presume, as we must, that the jury followed its instructions, *Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 1706, 95 L.Ed.2d 176 (1987), the jury would not consider appellant's "terror and fear" unless it first determined that such feelings were "caused by adequate provocation." While adequate provocation is necessary to sustain a finding of mitigation based on a heat of passion theory, it is not a necessary predicate to a finding of mitigation based on an imperfect self-defense theory. *See Comber, supra,* 584 A.2d at 42–43. For this same reason, the majority's reference to this court's decision in *Hurt v. United States,* 337 A.2d 215 (D.C.1975) (per curiam) is unpersuasive as it addresses adequate provocation as a mitigating circumstance. *Id.* at 218–19.

**6.** Criminal Jury Instruction No. 4.18 (which follows the guidance of our en banc decision in *Comber*) is the appropriate instruction in a first-degree murder case such as this, where the defendant has requested and the evidence supports instruction on the lesser-included offenses of second-degree murder and imperfect self-defense manslaughter. *See* Instruction No. 4.18, at 280. According to this instruction, in order to convict a defendant of first-degree murder the jury must find that the government has proved "beyond a reasonable doubt," *see, e.g., Harris v. United States,* 618 A.2d 140, 148 (D.C.1992), that "there were no mitigating circumstances," Instruction No. 4.18(A)(5).

The instruction defines mitigating circumstances to include instances in which

a person honestly but unreasonably believes that s/he is acting in self-defense. This may occur when s/he honestly but unreasonably believes that s/he is in danger of serious bodily injury or when s/he honestly but unreasonably believes that the force s/he uses is necessary to defend him/herself.

Instruction No. 4.18, at 282. The notes accompanying the instruction describe the presence of mitigating circumstances as

a partial defense. If the government fails to prove that there were no mitigating circumstances, but proves all other elements of murder, the resulting crime is voluntary manslaughter. As stated in *Comber,* "[A] homicide constitutes voluntary manslaughter where the perpetrator kills with a state of mind which, but for the presence of mitigating circumstances, would render the killing murder."

Instruction No. 4.18, at 284–85 (quoting *Comber, supra,* 584 A.2d at 42). In the instant case, the court did not indicate to the jury that the government must prove that there were no mitigating circumstances in order to find the defendant guilty of first-degree murder.

deliberation are not surrogates for providing the absence of self-defense or mitigating circumstances.

Whatever our intense, and certainly understandable apprehension of crime, we must not succumb to the temptation of routinely characterizing significant trial errors, which invite jury speculation, as harmless. A new trial may burden our taxpayers (including judges) with additional time and expense but so does the building and staffing of additional prisons for the incarceration of those who have legitimate defenses that cushion the degree of guilt (affecting the length of incarceration) for the crimes with which they have been charged.

I respectfully dissent.