BENTON, Judge,
concurring and dissenting.
I concur in Part I, Part II, and Part IV of the majority opinion. Therefore, I would also reverse the convictions and remand for a new trial. I dissent from Part III, however, because I believe the doctrine of imperfect self-defense was available to Kevin Alexander Connell and required the trial judge to give the jury a separate, additional instruction regarding voluntary manslaughter.
In Virginia, “manslaughter is a common law offense.” Blythe v. Commonwealth, 222 Va. 722, 725, 284 S.E.2d 796, 797 (1981). The common law traditionally recognized a circumstance in which a “ ‘killing in self-defen[s]e will be manslaughter only.’ ” Hash v. Commonwealth, 88 Va. 172, 194, 13 S.E. 398, 405 (1891) (citation omitted). This common law doctrine is generally called “the imperfect right of self-defen[s]e.” Id. at 193, 13 S.E. at 405. The Supreme Court has described the doctrine as follows:
Here is a clear recognition of the doctrine that, although the slayer provoked the combat, or produced the occasion, yet, if it was done without any felonious intent, the party may avail himself of the plea of self-defen[s]e.... “Indeed the assertion that one who begins a quarrel or brings on a difficulty with the felonious purpose to kill the person *441 assaulted, and aecomplish[es] such purpose, is guilty of murder, and cannot avail himself of the doctrine of self-defen[s]e, carries with it in its very bosom the inevitable corollary that if the quarrel be begun without a felonious purpose, then the homicidal act will not be murder. To deny this obvious deduction is equivalent to the anomalous assertion that there can be a felony without a felonious intent; that the act done characterizes the intent, and not the intent the act.”
Id. at 194-95,13 S.E. at 405-06 (citations omitted).[1]
Five years after Hash, the United States Supreme Court cited several common law treatises for the proposition that “where the accused embarks in a quarrel with no felonious intent, or malice, or premeditated purpose of doing bodily harm or killing, and under reasonable belief of imminent danger he inflicts a fatal wound, it is [manslaughter,] not murder.” Wallace v. United States, 162 U.S. 466, 471, 16 S.Ct. 859, 40 L.Ed. 1039 (1896). Applying that principle, the Court observed the following:
Granting that the jury would have been justified in finding that [the accused’s] intention in going for the gun and returning with it as he did was to inflict bodily harm on [the deceased] if he did not leave, still the presumption was not an irrebuttable one, and it was for the jury to say whether [the accused’s] statement that he procured the gun only for self protection was or was not true. And if they believed from the evidence that this was true, and that the killing *442 was under reasonable apprehension of imminent peril, then it was for the jury to determine under all the facts and circumstances whether [the accused] had committed the offense of manslaughter, rather than that of murder, if he could not be excused altogether.
Id. at 477, 16 S.Ct. at 863-64.
Several other states continue to recognize this common law doctrine. For example, the North Carolina Supreme Court has described the doctrine as follows:
[I]f defendant believed it was necessary to kill the deceased in order to save herself from death or great bodily harm, and if defendant’s belief was reasonable in that the circumstances as they appeared to her at the time were sufficient to create such a belief in the mind of a person of ordinary firmness, but defendant, although without murderous intent, was the aggressor in bringing on the difficulty, or defendant used excessive force, the defendant under those circumstances has only the imperfect right of self-defense, having lost the benefit of perfect self-defense, and is guilty at least of voluntary manslaughter.
An imperfect right of self-defense is thus available to a defendant who reasonably believes it necessary to kill the deceased to save himself from death or great bodily harm even if defendant (1) might have brought on the difficulty, provided he did so without murderous intent, and (2) might have used excessive force.
State v. Mize, 316 N.C. 48, 340 S.E.2d 439, 441-42 (1986) (quotation marks and citations omitted). See also Swann v. United States, 648 A.2d 928, 933 (D.C.1994); State v. Faulkner, 301 Md. 482, 483 A.2d 759, 761 (1984); State v. Sanders, 556 S.W.2d 75, 76 (Mo.Ct.App.1977).
The jury absolved Connell of willful, deliberate, and premeditated conduct by finding him not guilty of first degree murder but guilty only of second degree murder. See Code § 18.2-32. Thus, we can reasonably conclude that the jury may have accepted some portion of Connell’s testimony that he armed himself and returned to “scare” the victim and to *443 seek an “apology.” In any event, when we view this evidence in the light most favorable to Connell, see Martin v. Commonwealth, 13 Va.App. 524, 526, 414 S.E.2d 401, 401 (1992), we must conclude that the jury could have found Connell’s testimony to be germane to Connell’s claim of imperfect self-defense.
I disagree with the majority opinion’s holding that the manslaughter instruction the trial judge gave the jury was sufficient to encompass the theory of imperfect self-defense. The instruction on voluntary manslaughter was premised upon a finding by the jury of “sudden heat of passion.” The instruction Connell tendered in support of the theory of imperfect self-defense would have permitted the jury alternatively to find voluntary manslaughter even if the jury found that Connell did not act in “sudden heat of passion.” Connell’s instruction would have allowed the jury to find him guilty of voluntary manslaughter if the jury found that he “believed it to be necessary to kill” Jon Lord “to save himself from death or great bodily harm” and that his belief was “reasonable.” If the jury believed that Connell had initiated the altercation without felonious intent, it could have found voluntary manslaughter under the theory of imperfect self-defense, without regard to any finding of sudden heat of passion. Neither Hash nor the other authorities that discuss the theory of imperfect self-defense require proof of sudden heat of passion.
In Swann, the District of Columbia Court of Appeals rejected the government’s argument that the general manslaughter instruction was sufficient and that “heat of passion” encompasses the “fear” or “terror” found in a claim of imperfect self-defense. See 648 A.2d at 931-32. I believe the court’s' discussion is persuasive.
While [the government’s] argument is not without force, we think that an imperfect self-defense claim must be viewed through a different prism. Unlike other aspects of provocation, which can only reduce a homicide to manslaughter, a state of mind arising out of a self-defense situation justifies outright exoneration if reasonable. Because the subjective *444 state of mind required for an imperfect self-defense claim is identical to that required for a true self-defense claim, we can find in the controlling authority no suggestion that an actual, albeit unreasonable, belief that one’s life is in danger cannot serve as a mitigating factor justifying a voluntary manslaughter instruction where also coupled with an actual belief that the force used was necessary in self-defense. Thus, however the emotions of fear and terror unrelated to self-defense may relate to mitigation of second-degree murder where the killing was provoked or the defendant acted in the heat of passion, we think that analysis cannot be controlling on the distinct issue of a killing committed in the actual but unreasonable belief that the defendant is in mortal danger. While fear and terror may be a consequence of that situation, the motivation for the killing stems from the actual, albeit unreasonable, perception of imminent danger to one’s life, and the mitigation issue where a self-defense claim is involved is measured by the actual presence of that state of mind.
Swann, 648 A.2d at 932.[2]
For these reasons, I would hold that the evidence was sufficient to support an instruction to the jury under both manslaughter principles and that the trial judge erred in refusing the instruction concerning the claim of imperfect self-defense. Accordingly, I would remand with the additional *445 direction that Connell is entitled to an instruction on imperfect self-defense on retrial, if the evidence supports it.

. The Court’s later decision in Jackson v. Commonwealth, 98 Va. 845, 36 S.E. 487 (1900), did not abolish the doctrine of imperfect self-defense. Jackson was primarily concerned with the propriety of the trial judge giving a justifiable homicide instruction. Approving that action, the Court noted that the justifiable homicide instruction "did not instruct the jury, nor was it intended to instruct them, upon the degree of the prisoner’s guilt, whether it was murder or manslaughter, but it was merely intended to tell them that, upon the facts hypothetically stated in the instruction, the prisoner was not entitled to an acquittal.” Id. at 848, 36 S.E. at 488. Thus, I do not disagree with the majority opinion’s observation that Jackson did not eliminate the common law doctrine of imperfect self-defense.

. The District of Columbia applies the common law rule even when the accused has an actual, albeit unreasonable, belief that his or her life is in danger. The Hash Court did not state explicitly whether it required a reasonable belief on the part of the accused to justify an imperfect self-defense instruction. It limited its discussion to the intent with which the accused entered the deadly encounter. See 88 Va. at 195, 13 S.E. at 406 (limiting the accused’s culpability to "the intention with which the occasion was brought about” instead of the reasonableness of belief in danger). In this case, however, Connell requested an instruction predicated on the jury finding his belief in the necessity of killing the victim reasonable. Regardless of these distinctions in the doctrine, Swann demonstrates that imperfect self-defense encompasses a type of voluntary manslaughter clearly distinct from the voluntary manslaughter arising from the sudden heat of passion.