**Angela A. HARPER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 90–CF–605.**

District of Columbia Court of Appeals.

Argued April 7, 1992.
Decided May 12, 1992.

---

Monoranjan Bezboruah, appointed by the court, for appellant.

G. Bradley Weinsheimer, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, and Elizabeth Trosman and Gregory E. Jackson, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, and SCHWELB, Associate Judge, and PRYOR, Senior Judge.

PER CURIAM:

In this appeal appellant Angela Harper raises the principal claim that the trial judge erred by denying her request that the jury be instructed on self-defense.[1] We affirm.

I

Calvin Verrett went into a variety store to get change (he had only two $20 bills) for bus fare and was confronted and shot by appellant after he came out of the store to wait for a bus. Appellant, whom Mr. Verrett claimed never to have seen before, said "You're the one," and without hesitation shot him in the jaw, rendering him unconscious and causing permanent damage to his spinal cord.

---

1. Appellant was convicted by a jury of assault with a dangerous weapon, D.C.Code § 22–502, – 3202 (1989 Repl.), mayhem while armed, id. §§ 22–506, –3202; possession of a firearm during a crime of violence, id. § 22–3204; carrying a pistol without a license, id. § 22–3204; possession of an unregistered firearm, id. § 22–3211(a); and possession of unregistered ammunition, id. § 6–2361(c).

An eyewitness, James Clanton, who was driving by, saw Mr. Verrett standing in front of the bus stop and watched a person in a dark coat approach him, draw a gun, and shoot Mr. Verrett in the face. Mr. Clanton saw no gun in Mr. Verrett's hand, and did not observe any struggle or physical contact between appellant and Mr. Verrett. Mr. Clanton described Mr. Verrett's hands as being at his sides prior to the shooting and as being open, as though he were saying something. According to Mr. Clanton, it wasn't "any kind of anger or any kind of violent situation … [i]t seemed like this other person just walked right up to him and just shot him. There was no hesitation."

Michael Smith, a defense witness, who was standing at the bus stop, had seen a man in a red jacket pass by him, moving rapidly, coming from the direction of a paint store. He later heard a "commotion" from the variety store and described the encounter between appellant and Mr. Verrett as "weaker than fighting," "like scrapping."[2] According to Mr. Smith, appellant and the man were standing about three feet apart, and the man was using foul language. When appellant pushed the man away, "he came back toward her," "sort of like raising his hands" and when he "was right up on her," appellant shot him.

Appellant claimed that she had shot Mr. Verrett in self-defense. She testified that she had been robbed of the paint store's money (two twenties and a ten), as she was locking up the store, by a man who was wearing a red jacket and a pair of sweat pants and moving "like he was high or something." Appellant yelled at the man to give her back her money. She then went back into the paint store and called for her boyfriend, who was upstairs. She also reached over a counter in the store, grabbed a gun and put it in her pocket "to protect [her]self in the event that [the robber] turned on [her] and tried to hurt [her]." [Id.] Appellant then left the store, looked both ways on the street for the robber, and proceeded up the street in the direction she had seen the man run.

When appellant reached a variety store two doors away, she saw Mr. Verrett coming out of the store. Believing him to be the robber, she twice demanded that he return her money and he twice cursed at her ("Bitch, get out of my face"). Mr. Verrett then "started to raise his hands and come toward [her], so [she] backed up." As she backed up she pulled the gun out of her pocket, closed her eyes and fired.[3] Appellant then opened her eyes, ran back to the paint store and called her father to tell him what had happened.[4]

## II

Appellant contends that the trial judge erred by failing to instruct the jury on self defense on the grounds that appellant had used excessive force against "the robber," and that appellant's physical stature was greater than that of Mr. Verrett. We disagree.

The right of self-defense "is a law of necessity," arising "only when the necessity begins, and equally ends with the necessity; and never must the necessity be greater than when the force employed defensively is deadly." *United States v. Peterson*, 157 U.S.App.D.C. 219, 226, 483 F.2d 1222, 1229, *cert. denied* 414 U.S. 1007, 94

**2.** Mr. Smith also described the red jacket worn by Mr. Verrett as "so popular I'm scared to wear one."

**3.** The defense also called Lide Owens, the owner of the variety store, who testified that no one came into the store to ask for change prior to the shooting, but that there are two signs in the store stating that it is store policy not to give change without a purchase, and that he did not hear any kind of struggle or fighting outside his store that night. Three other defense witnesses were called as character witnesses.

**4.** In rebuttal, the government introduced into evidence a tape of the phone conversation between appellant and the police officers prior to her arrest in order to refute appellant's claim that she was crying and was not calm during the conversation. Appellant's contention that the trial judge abused her discretion by allowing the government to introduce the taped telephone conversation as rebuttal evidence is meritless. *See Patterson v. United States*, 580 A.2d 1319, 1323–24 (D.C.1990); *Fitzhugh v. United States*, 415 A.2d 548, 551 (D.C.1980).

S.Ct. 367, 38 L.Ed.2d 244 (1973) (footnotes omitted).

> There must have been a threat, actual or apparent, of the use of deadly force against the defender. The threat must have been unlawful and immediate. The defender must have believed that he [or she] was in imminent peril of death or serious bodily harm, and that his [or her] response was necessary to save himself [or herself] therefrom. These beliefs must not only have been honestly entertained but also objectively reasonable in light of the surrounding circumstances. It is clear that no less than a concurrence of these elements will suffice.

*Id.*, 157 U.S.App.D.C. at 226–227, 483 F.2d at 1229–30 (footnotes omitted). *See Scott v. United States*, 536 A.2d 1040, 1050 (D.C. 1987), *vacated on other grounds*, 543 A.2d 346 (1988) and *rev'd on other grounds*, 559 A.2d 745 (1989) (quoting *McPhaul v. United States*, 452 A.2d 371, 373 (D.C.1982)); *Fersner v. United States*, 482 A.2d 387, 391 (D.C.1984) (citing Criminal Jury Instructions for the District of Columbia, No. 5.14 (3d ed. 1978)).

Appellant testified that she believed that Mr. Verrett was the man who had robbed her, and that he was high "or something." She returned to the store after being robbed, got a gun, and then went in pursuit of the robber. She further testified that upon confronting Mr. Verrett, he raised his hands in anger and came within two feet of her, "right up on me." She also testified that at that point she believed that he "was going to kill [her] or hurt [her] very seriously." However, she admitted that she did not know if he had a weapon, and had seen none in his hands nor the robber's, but explained that she thought he was going to kill her because of "[h]is look on his face, the anger, ... and the way he was charging at me." Although Mr. Verrett did not touch her, and both of his hands were up, just below his shoulders, she shot him.

■ An accused is entitled to a requested instruction on the defense theory of the case "if there is 'any evidence fairly tending to bear upon the issue ...,' however weak." *Fersner, supra*, 482 A.2d at 392 (quoting *Rhodes v. United States*, 354 A.2d 863, 864 (D.C.1976)). But the trial judge may not give a self-defense instruction where the defendant, as a matter of law, has used excessive force. *Scott, supra*, 536 A.2d at 1050; *Bowler v. United States*, 480 A.2d 678, 682 n. 8 (D.C.1984). The trial judge was presented with a situation in which there was no evidence of a weapon in Mr. Verrett's hands (or the robber's hands, if they were not one and the same person) and no evidence that Mr. Verrett had touched appellant, either at the time he allegedly robbed her or in the period immediately preceding the shooting. The only evidence of an imminent threat was appellant's testimony that Mr. Verrett was lunging at her and that she subjectively believed that he would kill her. The eyewitnesses, Mr. Clanton, and even Mr. Smith, observed, at most, a commotion, and not a violent situation during appellant's encounter with Mr. Verrett. The judge found, moreover, that because appellant was physically larger than Mr. Verrett, "they are probably comparable in terms of strength." [5] The judge concluded as a matter of law that appellant had used excessive force and refused to give a self-defense instruction.

■ The court has upheld the denial of a self-defense instruction under similar circumstances. *See Scott, supra*, 536 A.2d at 1050 (evidence at trial showed that appellant had escalated an otherwise weaponless "street scuffle" to deadly level); *Byrd v. United States*, 364 A.2d 1215, 1220 (D.C. 1976) (self-defense instruction properly rejected where the evidence established that the victim's hand was empty at the time he was shot); *Bowler, supra*, 480 A.2d at 681–682 n. 8. Moreover, "[i]t is well established that 'self-defense may not be claimed by one who deliberately places [her]self in a position where [she] has reason to believe [her] presence ... would provoke trouble.'" *Mitchell v. United States*, 399 A.2d 866, 869 (D.C.1979) (quoting *Rowe v. Unit-*

---

**5.** The judge could properly consider the comparative sizes of appellant and Mr. Verrett in evaluating the objective circumstances. *See Graves v. United States*, 554 A.2d 1145 (D.C.1989).

*ed States,* 125 U.S.App.D.C. 218, 219, 370 F.2d 240, 241 (1966)). The evidence clearly showed that appellant put herself in a position that was likely to result in an escalation of tensions, *see id.* at 869, and used deadly force against a man whose empty hands were in plain view. The evidence did not show that Mr. Verrett was the first aggressor. *See Peterson, supra,* 157 U.S.App.D.C. at 228, 483 F.2d at 1231. Appellant's own witness, Michael Smith, confirmed that there was not a fight or circumstances in which appellant was in danger of serious bodily injury. Appellant admitted that there were other people on the street and in adjacent stores, but she did not call for them to help her or wait for her boyfriend to come with her; nor did she call the police.

Under the circumstances, therefore, the judge properly denied the defense request that the jury be instructed on self-defense.

■ Accordingly, we affirm the judgment.[6]

---

**6.** Appellant's remaining claims are meritless. We find no prejudice requiring reversal as a result of the prosecutor's opening and closing statements to the jury. *See Dixon v. United States,* 565 A.2d 72, 76 (D.C.1989). Furthermore, we find no error by the trial judge in instructing the jury using the standard lesser-included offense jury instruction instead of an "acquittal first" instruction; appellant did not request an alternative jury instruction. *See Wright v. United States,* 588 A.2d 260, 262 (D.C. 1991); *see also Towles v. United States,* 496 A.2d 560, 564–565 (D.C.1985), *aff'd on reconsideration en banc,* 521 A.2d 651 (1987).