Jerome GAY, Appellant,

v.

UNITED STATES, Appellee.

No. 08–CM–916.

District of Columbia Court of Appeals.

Argued March 3, 2010.

Decided Feb. 3, 2011.

Jeffrey L. Light, Washington, DC, for the appellant.

L. Jackson Thomas II, Assistant United States Attorney, with whom Channing D. Phillips, Acting United States Attorney at the time the brief was filed, and Roy W. McLeese III, John P. Mannarino, and Heather Hill, Assistant United States Attorneys, were on the brief for the appellee.

Before WASHINGTON, Chief Judge, and KRAMER and OBERLY, Associate Judges.

WASHINGTON, Chief Judge:

Jerome Gay appeals from his conviction on a single count of simple assault, in violation of D.C.Code § 22–404 (2001), arising out of an altercation with complainant Allen Johnson. Gay asserts on appeal that the trial court committed three errors requiring reversal of his conviction: (1) it wrongly prevented an unnamed witness from testifying because it improperly ruled that the witness' testimony would be cumulative; (2) it improperly granted a blanket Fifth Amendment privilege from testifying to defense witness Antonio Sparks; and (3) it wrongly denied Gay's motion to have a psychiatric expert appointed to examine Johnson's medical records and testify about the effects of Johnson's mental illnesses and medications on his actions on the day of the assault and his ability to testify at trial. Because we hold that the trial court erred both by excluding the unnamed witness' testimony and by ruling that Gay used excessive force in defending himself as a matter of law, we reverse and remand for a new trial.

## I.

The central issue in this case is the determination of whether appellant Gay or complainant Johnson was the initial aggressor in an altercation that took place between the two men on December 1, 2007. Their recollections of the events that occurred that evening are wildly different. Gay and Johnson had been dating for approximately a year and a half. Johnson testified that on the night of the assault, Gay arrived unsolicited at John-

son's apartment, where Johnson was alone watching television. According to Johnson, Gay demanded money from Johnson, and when Johnson refused to pay him, Gay "started to attack [Johnson]" and "hit [him] in [his] face a couple of times," resulting in a cut over his eye that was bleeding when emergency responders arrived.

While Gay admitted that he punched Johnson on the night of December 1, 2007, his version of the events leading up to that punch contradicts Johnson's testimony. Gay testified that Johnson and his friend, Dominique Glover, drove to Gay's apartment, picked him up, and brought him to Johnson's apartment, purportedly so that Gay could obtain drugs from Johnson. Once Gay was in the apartment, however, Johnson told Gay that he would not give him anything. When Gay then tried to leave Johnson's apartment, Johnson became violent, latching himself onto Gay's legs and biting him over Gay's protests to leave him alone. Because Johnson refused to let go of Gay's legs, and because Gay was afraid Johnson would bite or grab his genitals, Gay punched Johnson once across the face and left the apartment. Police eventually arrested Gay at his own apartment after Johnson called 911 and told them about the assault.

During the defense case, in which Gay argued that he punched Johnson in self-defense, Dominique Glover testified about her recollection of the events of that evening. She explained that she was Johnson's brother's former girlfriend and hung out at Johnson's house frequently, but that she no longer hung around with Gay. Glover said that she had "picked Jerome Gay up for Allen Johnson" that evening and that the three of them had driven to Johnson's house, where Glover left the two men in the living room and went into the kitchen. She then testified that, "all of a sud-

den [she] heard Mr. Gay saying that he wanted to leave ... and he was telling Allen, Mr. Johnson, to open up the door so he could leave." She was less than five feet from where they were arguing, and though she did not observe the start of the altercation, she did see "[Gay] leaving out the door and Mr. Johnson grabbing his leg, telling him, don't leave, and he was going out the door, and Mr. Johnson was basically hanging onto his leg. So he was going out the door, too." When she then saw Johnson come back into the house, "his face was bleeding." Glover did not see Gay strike Johnson, but she did testify that she heard the sound of "hits" coming from outside of the front door.

Gay also presented the testimony of Bryant Brooks. Brooks was the complainant in a criminal case against Johnson based upon an alleged altercation that was remarkably similar to the altercation between Johnson and Gay. Brooks testified that when he refused to continue having sex with Johnson and attempted to leave Johnson's apartment, Johnson grabbed Brooks and prevented him from leaving, resulting in a "tussle" by Johnson's door. At that time, Brooks called 911, and Johnson thereafter "attacked" Brooks again; this secondary attack was overheard by the police because although Brooks had dropped his phone while calling 911, the call had not disconnected. Brooks testified that he could not remove Johnson from his body during the attack, and the police arrested Johnson once they arrived on the scene.

The trial court excluded the testimony of two defense witnesses—an unnamed man and Antonio Sparks—and also denied Gay's motion for a court-appointed psychiatric expert to testify as to the effects of Johnson's alleged mental disorders and the medications used to treat them. The exclusions of these three witnesses provide

the grounds for Gay's three challenges to his conviction.

After the two-day bench trial, the trial court ultimately held that Gay had not acted in self-defense and convicted him on a single count of simple assault. It credited Johnson's version of the events and discredited Gay's. The trial court's entire findings with regard to Gay's other witnesses noted that "the Court heard from various other witnesses on behalf of the defense, specifically Bryant Brooks, who had at least prior convictions," and "Dominique Glover, who indicated that she was there and she saw portions of what was happening inside [Johnson's apartment], [but] did not see the entire events as they unfolded." As an alternative ruling, the trial court also indicated:

> Assuming arguendo [Gay's] version, the Court cannot find that as depicted or as testified to, the grabbing of Mr. Gay's legs was an aggressive act or an act which would cause Mr. Gay to do what he actually did. Assuming arguendo that this Court believes it, which it doesn't, it would be excessive force even from that viewpoint. But the Court does not credit [Gay's] version of the events.

In effect, the trial court concluded that, on the facts shown—hypothetically—by Gay's own testimony, self-defense would have been unavailable to him as a matter of law. Thereafter, the trial court found Gay guilty and sentenced him to 180 days, with all but forty-five suspended, after which he would be placed on supervised probation for two years.

## II.

■ Gay first challenges the trial court's exclusion of the testimony of the unnamed witness who would have provided support for Gay's defense of self-defense. Gay proffered that this witness would have testified that he was the defendant in a pending assault case in which Johnson was the complainant. The proffered facts of the unnamed witness' case were markedly similar to those of the instant case: the unnamed witness would testify that Johnson prevented him from leaving the house, he defended himself, and—most importantly—Johnson called the police on him. The trial court excluded this witness because "he perhaps [had] a 5th Amendment right,[1] and it's cumulative" as to the other evidence, presumably Brooks' testimony. Because this testimony was not cumulative and was probative as to the central issue of this case, and because the trial court's contradictory findings of fact prevent us from determining with confidence that the exclusion was harmless, we hold that the trial court committed reversible error by excluding the testimony of the unnamed witness.

■ We review a trial court's decision to exclude evidence for abuse of discretion. *See, e.g., (Markus) Johnson v. United States*, 960 A.2d 281, 294 (D.C.2008). Even if we find that a trial court erred by excluding evidence, we must still determine whether that error was harmless. *Id.* at 295. For error to be harmless, we must be able to "say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *See, e.g., Woodard v. United States*, 1 A.3d 371, 374 (D.C.2010) (citation omitted). Under Fed-

---

1. Since the trial court did not pursue the potential Fifth Amendment consequences of admitting the unnamed witness' testimony, we proceed here upon the assumption that the trial court's sole reason for excluding this witness was because it believed his testimony would be cumulative.

eral Rule of Evidence 403,[2] relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice ... or by considerations of ... needless presentation of cumulative evidence." Here, we find that the unnamed witness' testimony was not cumulative and that by excluding that testimony, the trial court committed a reversible abuse of discretion.

As stated above, the focal issue in this trial was a determination of whether Gay or Johnson was the initial aggressor. The unnamed witness' testimony would unquestionably have been probative of this issue because he would have testified that Johnson attacked him in a nearly identical fashion, called the police on him, and alleged assault. Particularly because the instant case was a bench trial, the unnamed witness' proffered testimony was not at all prejudicial since it could only have been detrimental to Johnson, who was not a party to the trial.

Nor was the testimony cumulative. The only similar evidence was presented by Brooks, who, after his own incident with Johnson, called the police to report Johnson's assaultive behavior. This is factually different from, and less probative than, the unnamed witness' proffered testimony that

after Johnson attacked him, *Johnson* called the police and claimed to be a victim—just as he allegedly did to Gay. Additionally, the trial court's oblique discrediting of Brooks' testimony on account of the fact that he "had at least prior convictions" effectively eliminated all credible testimony available to support Gay's version of the events.[3] Had the unnamed witness testified, the trial court might have found the testimony relevant and credible evidence of Johnson's behavioral tendencies, and therefore the trial court might have been more likely to credit Gay's version of the events. Under the unique factual and procedural circumstances of this case, because the unnamed witness' testimony was highly probative, non-prejudicial, and non-cumulative, we hold that the trial abused its discretion by excluding it.

This error was compounded by the trial court's contradictory and imprecise findings of fact. Where a trial court's "findings of fact, conclusions of law and judgment, taken together," do not "present an integrated, internally consistent and readily understood whole," remand is appropriate. *Bowser v. Bowser,* 515 A.2d 1128, 1130 (D.C.1986). Here, we are troubled by the trial court's contradictory finding that it credited Johnson's version of

---

2. We generally "follow the policy set forth in Federal Rule of Evidence 403." *See (William) Johnson v. United States,* 683 A.2d 1087, 1099 (D.C.1996).

3. In addition to the unnamed witness, Antonio Sparks would also have testified that he had witnessed Johnson assault Gay in the past and then call the police, claiming Gay assaulted him. Sparks' testimony was excluded when the trial court granted him a blanket Fifth Amendment privilege from testifying. Thus, the trial court ultimately excluded all evidence implicating Johnson's peculiar tendency to call police after aggressively preventing men from leaving his apartment except for Brooks' testimony; discredited Brooks' testimony entirely; and then found Gay's ver-

sion of the events incredible in the absence of corroboration. We are concerned that this sequence of rulings ran perilously near to completely preventing Gay from presenting his defense of self-defense, which would obviously violate Gay's Sixth Amendment rights. *See Washington v. Texas,* 388 U.S. 14, 18, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). It is one thing for a trial court to exclude a witness for reasons of cumulative testimony as to a theory that the trial court ultimately accepts; it is more troubling to us for a trial court to exclude two witnesses who would bolster the defense's theory of the case, discredit the single remaining witness corroborating that theory, and then hold that the evidence did not support that theory.

the events but also impliedly credited critical testimony from Glover, a disinterested third party eyewitness who, although she was a friend of Johnson's, testified on behalf of Gay. The trial court noted that Glover "was there and saw portions of what was happening outside" but "did not see the entire events as they unfolded." Glover testified in complete corroboration of Gay that she heard him ask to leave, saw the door being opened, and saw Johnson "hanging onto [Gay's] leg" as the two went out the door, after which she heard the sound of hits and saw Johnson reenter the apartment with a bloody face. In stark contrast, Johnson testified that he was at home alone and that Gay, unprovoked, attacked Johnson inside the apartment and then fled. These two accounts of the events of December 1 cannot both be accurate, yet the trial court apparently found no reason to discredit either version. Because the trial court's findings of fact were thus confusing, we cannot say with confidence that its error in excluding the unnamed witness' testimony—which would have spoken directly to the central issue of the case—was harmless.

### III.

■ Our inquiry does not end here, however. The harm of the error described above would be of no moment were we to conclude, as the trial court concluded, that even assuming Gay's version of the events was accurate, he was not entitled to a defense of self-defense because his punch amounted to excessive force as a matter of law. Because we disagree with the trial court's legal conclusion that a punch under these circumstances amounted to excessive force, the trial court's alternative ruling does not save this case from being re-

versed and remanded to the trial court for a new trial.

■ When reviewing a trial court's ruling that a defendant failed to establish that he acted in self-defense, we defer to the trial court's findings of fact unless clearly erroneous and we review its ultimate legal conclusions de novo. See Fersner v. United States, 482 A.2d 387, 393 (D.C.1984) (noting that we "must accept as true" the facts surrounding an assault but that the ultimate ruling as to whether the defendant used excessive force is "a matter of law"). "The right of self-defense, and especially the degree of force the victim is permitted to use to prevent bodily harm, is premised substantially on the victim's own reasonable perceptions of what is happening." Id. at 391. Such perceptions may include "an enhanced sense of peril based on personal knowledge that the attacker has committed prior acts of violence." Id. Even where self-defense is justified, a defendant "may not use any greater force than [he] actually and reasonably believes to be necessary under the circumstances...." CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 5.13(C) (4th ed. rev.2008).

Assuming arguendo—as the trial court did—that Gay's version of the events was accurate, he threw a single punch across Johnson's face because Johnson latched himself onto Gay's legs, refused to let go over pleas for him to do so, and bit Gay repeatedly.[4] We disagree that, as a matter of law, Gay's reaction amounted to excessive force. Under the circumstances, were the trial court's determination accurate, it is hard to imagine any response Gay could have taken to free himself from Johnson's aggressive grasp that would have been appropriate. A single punch thrown in response to a physically aggres-

---

4. It is instructive here that in some contexts, "[h]uman teeth may, as a matter of law, be a

deadly or dangerous weapon...." In re D.T., 977 A.2d 346, 355 (D.C.2009).

sive, biting assailant pales in comparison to instances in which we have upheld determinations of excessive force as a matter of law; such cases uniformly involve situations where the secondary, responsive aggression was completely disproportionate to the initial aggression faced. *See, e.g., (Markus) Johnson, supra,* 960 A.2d at 285–89 (in response to decedent pressing groin up against appellant's buttocks, appellant used knives, a screwdriver, a bottle, a floor buffer, and a hacksaw to kill decedent); *Edwards v. United States,* 721 A.2d 938, 940 (D.C.1998) (in response to decedent grabbing appellant's legs, appellant shot decedent twice, killing him); *Harper v. United States,* 608 A.2d 152, 155–56 (D.C.1992) (in response to prior unarmed robbery, appellant subsequently went outside and shot unarmed individual whom she believed to be the robber in the face); *Fersner, supra,* 482 A.2d at 389–90 (in response to decedent allegedly kicking or beating a third person, appellant hit decedent in the head thirteen times with a hatchet, killing him). In the instant case, the single punch causing a facial laceration, for which Johnson refused medical assistance, is in far closer proportion to the initial aggression than the secondary

violence exhibited in any of the cases cited above. Thus, we hold that the court erred by determining that as a matter of law, Gay forfeited his defense of self-defense by using excessive force against Johnson.

## IV.

In sum, we find that the trial court erred by excluding the unnamed witness' testimony and that this error was compounded by the trial court's contradictory and confusing findings of fact. On the record before us, we cannot assuredly say that the unnamed witness' testimony would not have substantially swayed the trial court's evaluation of Gay's self-defense claim, and we cannot agree that Gay's actions amounted to excessive force as a matter of law. Therefore, we hold that reversal and remand are necessary in this case.[5]

*So ordered.*

---

5. Because we hold that reversal is required on this challenge, we do not reach Gay's other two arguments on appeal: (1) that the trial court erroneously granted Sparks a blanket Fifth Amendment privilege from testifying; and (2) that it erroneously denied Gay's motion to appoint a psychiatric expert.