**Marvin Richard EWELL, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 11–CM–1593.

District of Columbia Court of Appeals.

Submitted Feb. 21, 2013.

Decided July 25, 2013.

Amended Sept. 5, 2013.*

---

* In light of the minor revision incorporated in this amended opinion, appellee's motion to amend opinion is denied as moot in a separate order.

Donald L. Dworsky was on the brief for appellant.

Ronald C. Machen Jr., United States Attorney, Roy W. McLeese III, Assistant United States Attorney at the time the brief was filed, and John P. Mannarino and Kendra D. Briggs, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE–RIGSBY and OBERLY, Associate Judges, and FERREN, Senior Judge.

1. In violation of D.C.Code § 22–404 (2009 Supp.).

2. Ms. Latham's father, Oliver Jones, was the only other witness who testified on behalf of the government. However, Mr. Jones was not present when the alleged assault occurred.

BLACKBURNE–RIGSBY, Associate Judge:

Following a bench trial, appellant Marvin Richard Ewell was found guilty of one count of simple assault.[1] On appeal, he argues that there was insufficient evidence to prove beyond a reasonable doubt that he did not act in self-defense against the complainant, Brittany Latham. We conclude that the trial court erroneously determined that appellant employed excessive force against Ms. Latham. Further, in evaluating whether appellant reasonably believed that harm was imminent, the trial court applied an incorrect legal standard and did not make essential factual findings. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

I.

On March 11, 2011, appellant was at home in Southeast, Washington, D.C., while his roommate, James Hampton, was hosting Brittany Latham, Mykeisha Bassett, and approximately three other people. At trial, Ms. Latham testified on behalf of the government that appellant entered the bedroom and started calling Ms. Bassett a "baldheaded [expletive]," whereupon Ms. Latham and Ms. Bassett decided to leave.[2] According to Ms. Latham, she was in the process of exiting the apartment when appellant "hit [her] with the door." She responded by throwing her drink at appellant's face and appellant grabbed her by the neck and hit her six or seven times.[3] Ms. Latham testified that as she attempted to leave the apartment again, appellant "ran up to [her] one more time and he

3. According to Ms. Latham, Ms. Bassett attempted to stop appellant from hitting Ms. Latham, at which point appellant began punching Ms. Bassett. Other people at the apartment intervened to break up the fight.

punched [her] in the eye."[4]

Testifying in his own defense, appellant described a starkly different version of the evening's events. According to appellant, Ms. Latham and her friends were talking loudly and playing loud music when he asked them to "quiet down." When he asked Ms. Latham to stop cursing, she responded that they "ain't got to be here." At that point, appellant told them that they could leave and proceeded to open the door. Before Ms. Latham walked out of the front door, she threw a hard plastic cup that contained vodka at appellant and, in that same moment, also hit him in the mouth with her hand.[5] Appellant testified that his mouth started bleeding immediately after he was hit by either the cup or Ms. Latham's hand. According to appellant, he responded to her attack by striking her once in the face with his fist and described his reaction as a reflex to Ms. Latham's attack.[6] Appellant acknowledged that when he hit her, he did so with his full strength. He testified that, despite the blow, Ms. Latham "was still coming" at him until Mr. Hampton intervened and stopped the fight. When appellant was asked why he hit Ms. Latham, he explained "[b]ecause these young girls these days, you know, they're [sic] carry knives. You know, I don't know." In addition, appellant stated, "the only way she probably could have hurted [sic] me real bad if she had pulled a knife out. If she had pulled a knife she would have stabbed me

in my face or something because she instantly attacked me."

Mr. Hampton, the only other defense witness, corroborated appellant's version of events. Specifically, Mr. Hampton confirmed that appellant had interrupted the group of people in the bedroom because they were being "rambunctious." Mr. Hampton testified that Ms. Latham was walking out of the apartment door when she turned and threw a hard plastic cup that contained vodka at appellant's face.[7] According to Mr. Hampton, after the cup hit appellant, "there was a lot of blood on his shirt, and his lip was messed up...." Then, "[a]s soon as she threw the cup, she proceeded to try to hit him, like try to rush him." As Ms. Latham tried to "attack" appellant, appellant "defended himself and smacked her" with an open palm. Mr. Hampton testified that after he saw appellant hit Ms. Latham, he grabbed appellant, while Ms. Bassett restrained Ms. Latham, which broke up the fight "instantly." Thus, "after the first strike, there was nothing else after that."

At the conclusion of the bench trial, the trial court found that Ms. Latham "seems to have exaggerated some of this story" and discredited her testimony that appellant hit her six or seven times. Instead, the trial court credited appellant's and Mr. Hampton's testimony that Ms. Latham threw a cup at appellant, causing him to bleed, and that appellant responded by

---

4. The government later introduced photographic evidence establishing that Ms. Latham's eye was swollen.

5. Appellant testified that "[the cup] hit me in my mouth and she was like, at the same time was attacking me." In response to the trial court's questioning, he further explained that Ms. Latham threw the cup and struck him at the same time because "I guess she was thinking that the alcohol was going to blind me or stop me or something, but she like ... came at me and if [Mr. Hampton] don't get

between us, we probably would have been on the floor."

6. In response to counsel's question: "Besides the one blow you described, did you hit her any other time?", appellant stated, "No, no, no, no, no, no."

7. Mr. Hampton estimated that Ms. Latham was approximately fourteen feet from appellant when she threw her cup at him.

hitting Ms. Latham only once. The trial court did not make a factual determination concerning whether Ms. Latham attacked appellant either as she threw the cup or immediately thereafter. The trial court determined that: (1) appellant did not need to hit Ms. Latham to defend himself because appellant was "much bigger than Ms. Latham";[8] and (2) as required by the standard set forth in *Brown v. United States*, 619 A.2d 1180, 1182 (D.C.1992), appellant did not "honestly and reasonably" believe that he "was in imminent danger of serious bodily harm" because "appellant admitted himself she can't hurt him"—instead, the trial court found that appellant had struck Ms. Latham out of anger.[9] Therefore, the trial court found that appellant had not acted in self-defense and that by striking Ms. Latham, he committed simple assault.

## II.

 Appellant argues that the trial court erred by: (1) concluding that he responded to Ms. Latham's attack with excessive force; and (2) failing to consider the reasonableness of appellant's belief—in the moment that he struck Ms. Latham—that he was in imminent danger of bodily harm. "Reasonable force may be used in self-defense if the actor reasonably believes that he or she is in imminent danger of bodily harm." *Snell v. United States*, 754 A.2d 289, 290 (D.C.2000) (citation omitted). If a defendant has raised this defense, the government is required to disprove that the defendant acted in self-defense beyond a reasonable doubt. *Rorie*

*v. United States*, 882 A.2d 763, 776 (D.C. 2005) (citation omitted). "When reviewing a trial court's ruling that a defendant failed to establish that he acted in self-defense, we defer to the trial court's findings of fact unless clearly erroneous and we review its ultimate legal conclusions *de novo*." *Gay v. United States*, 12 A.3d 643, 648 (D.C.2011) (citation omitted).

## A.

 We first consider whether the trial court correctly determined that appellant responded to Ms. Latham's conduct with excessive force. The trial court found that appellant, who was much larger than Ms. Latham, did not need to strike her to defend himself. Instead, the court determined that he could have grabbed Ms. Latham's shoulders and shaken her, or simply pushed her out of the house. Yet, "[u]nder our law, the actor's subjective perceptions are the prime determinant of the right to use force—and the degree of force required—in self-defense, subject only to the constraints that those perceptions be reasonable under the circumstances." *Alcindore v. United States*, 818 A.2d 152, 157 (D.C.2003) (citation and internal quotation marks omitted). Therefore, the trial court should not have considered only what appellant could have done to fend off Ms. Latham, but, in keeping with our case law, whether striking her once was a proportionate reaction to the threat that he perceived. Importantly, "instances in which we have upheld determinations of excessive force as a matter of

---

8. The trial court explained that appellant "could have grabbed her shoulder and shook her ... and pushed her out of the house.... He could have just pushed her. There are lots of things he could have ... done to get her to stop...." We interpret this to mean that the trial court concluded that appellant used excessive force.

9. In particular, the trial court determined that appellant struck Ms. Latham because "he was pissed off that he just got hit in the mouth by some random girl he doesn't know ... [who] was clearly disrespectful.... [H]e was upset, however, you know, you can't haul off and slap the mess out of her and give her a big black eye because of the result of it."

law" have "uniformly involve[d] situations where the secondary, responsive aggression was completely disproportionate to the initial aggression faced." [10] *Gay, supra,* 12 A.3d at 649 (citation omitted). Here, there was evidence tending to show that Ms. Latham threw a hard cup at appellant, hitting him in the face, and that immediately thereafter, Ms. Latham hit appellant in the face with her hand—with one or both actions causing his mouth to bleed. Appellant responded by striking Ms. Latham once. Appellant did not escalate the force initially used by Ms. Latham by responding with a weapon or multiple blows. Accordingly, we conclude that in this case, appellant's response to Ms. Latham was not "completely disproportionate to the initial aggression faced." *See, e.g., id.* (concluding that a single punch thrown in response to a person who latched onto the appellant's legs and bit the appellant was not disproportionate to the initial aggression). Consequently, the trial court erred as a matter of law in determining that appellant forfeited his self-defense claim by using excessive force.

## B.

■ We next consider whether the trial court erred in finding that appellant did not reasonably believe that Ms. Latham posed a threat of imminent bodily harm.[11] At the outset, we conclude that the trial court applied the incorrect legal standard to evaluate the reasonableness of appellant's belief because it did not consider the distinction between whether appellant's use of force was deadly or nondeadly. That is, "where an accused, claiming self-defense, uses deadly force, he must—at the time of the incident—actually believe and reasonably believe that he is in imminent peril of death or serious bodily harm; whereas one utilizing nondeadly force must show that he reasonably believed that harm was imminent." *McPhaul v. United States,* 452 A.2d 371, 373 (D.C.1982) (citation omitted).[12] Here, as appellant did not resort to deadly force, the latter, less onerous standard applies. *See, e.g., Snell, supra,* 754 A.2d at 290 (considering whether appellant had a reasonable belief that he was in imminent danger of bodily harm when he exercised

10. In *Gay, supra,* 12 A.3d at 649, we cited the following three cases involving excessive force in support of the proposition that a finding of excessive force requires a disproportionate response to the initial aggression: (1) *Johnson v. United States,* 960 A.2d 281, 285–89 (D.C.2008), "in response to decedent pressing his groin up against appellant's buttocks, appellant used knives, a screwdriver, a bottle, a floor buffer, and a hacksaw to kill decedent"; (2) *Edwards v. United States,* 721 A.2d 938, 940 (D.C.1998), "in response to decedent grabbing appellant's legs, appellant shot decedent twice, killing him"; and (3) *Harper v. United States,* 608 A.2d 152, 155–56 (D.C.1992), "in response to prior unarmed robbery, appellant subsequently went outside and shot unarmed individual whom she believed to be the robber in the face."

11. As a self-defense claim requires a showing that the "actor reasonably believes that he or

she is in imminent danger of bodily harm," *Snell, supra,* 754 A.2d at 290 (citation omitted), if the trial court properly determined that appellant did not harbor such belief, the trial court's erroneous finding of excessive force would be harmless. *See, e.g., Gay, supra,* 12 A.3d at 648 (recognizing that the harm of the trial court's error in excluding an unnamed witness who would have provided support for Gay's self-defense claim "would be of no moment" if this court were to conclude that, as a matter of law, Gay had employed excessive force against the complainant).

12. This distinction between the degree of initial force and corresponding belief of serious versus non-serious harm is also reflected in our criminal jury instructions. *Compare* Criminal Jury Instructions for the District of Columbia, No. 9.501(A) (5th ed. 2009) (nondeadly force), *with* Criminal Jury Instructions for the District of Columbia, No. 9.501(B).

non-deadly force by fending off complainant with pepper spray). Therefore, appellant needed to show some evidence that he reasonably believed he faced bodily harm, rather than serious bodily harm. Yet, by explicitly relying on *Brown, supra,* 619 A.2d at 1182, the trial court applied an incorrect and more stringent standard to determine that appellant did not "honestly and reasonably believe[ ] that he was in imminent danger of serious bodily harm."[13] Consequently, we consider whether such legal error was harmless. *See Douglas v. United States,* 859 A.2d 641, 642 (D.C.2004) (finding that any legal error by the trial court in "ruling that [appellant] did not produce sufficient evidence to furnish the factual predicate for a legally valid claim of self-defense" was harmless because trial court did not credit any of the testimony by appellant that established the claim).

In this case, the trial court's legal conclusion that appellant's belief that he faced serious bodily harm was unreasonable was predicated on the court's factual findings that: (1) appellant did not believe that Ms. Latham could hurt him; and (2) appellant struck Ms. Latham because he was angry that she had been disrespectful. However, in making these findings, the trial court neither acknowledged nor accounted for appellant's contradictory testimony that he had reflexively struck Ms. Latham because she had first attacked him, initially with the cup and then with her hand—dual actions tending to show that appellant act-ed to protect himself. Further, the trial court did not make a specific factual finding as to whether, as alleged by both appellant and Mr. Hampton, Ms. Latham had attacked appellant after she threw the cup of vodka at his face and *before* appellant struck her.[14] With such deficiencies in the trial court's findings, we are unable to apply the proper standard from *McPhaul, supra,* 452 A.2d at 373, and *Snell, supra,* 754 A.2d at 290, to this record. Therefore, in the absence of such findings by the trial court, we cannot determine whether, as a matter of law, when appellant struck Ms. Latham, he reasonably believed that she posed an imminent threat of bodily harm. *See Gay, supra,* 12 A.3d at 648 ("The right of self-defense, and especially the degree of force the victim is permitted to use to prevent bodily harm, is premised substantially on the victim's own reasonable perceptions of what is happening." (quoting *Fersner v. United States,* 482 A.2d 387, 393 (D.C.1984))). Consequently, we remand this judgment to the trial court for further factual findings and reconsideration of appellant's self-defense claim under the proper, less stringent standard. *See Gay, supra,* 12 A.3d at 647 ("Where a trial court's finding of fact, conclusions of law and judgment, taken together, do not present an integrated, internally consistent and readily understood whole, remand is appropriate." (internal citation and quotation marks omitted)).

We remand for the trial court to make additional factual determinations on the

---

13. The government also incorrectly cites the standard from *Brown, supra,* 619 A.2d at 1182—which involved the use of deadly force because the defendant was convicted of manslaughter—to argue that the trial court was entitled to find that appellant's conduct was unreasonable because there was no evidence that appellant believed that he was in danger of serious bodily harm, or that striking Ms. Latham was necessary to avoid that harm.

14. Appellant's testimony regarding his concern that Ms. Latham could have been armed with a knife seems to be an acknowledgment that she could not have seriously injured appellant unless she was armed. However, the fact that Ms. Latham had cut appellant's mouth, which the trial court credited, indicates that Ms. Latham was capable of harming appellant to some extent.

record as to whether Ms. Latham attacked or "rushed" appellant after she threw the cup at him. Based upon these factual determinations, the trial court can reconsider whether the government established beyond a reasonable doubt that appellant did not act in self-defense. *See McPhaul, supra,* 452 A.2d at 373 ("[O]ne utilizing nondeadly force must show that he reasonably believed that harm was imminent." (internal citation omitted)).

Accordingly, the judgment is reversed and remanded to the trial court for further proceedings consistent with this opinion.

*So ordered.*