Ferren, Senior Judge,
concurring:
I join the opinion of the court and write separately only to reinforce it with some additional perspective.
I.
This is a strange case. A man shouts an ugly slur against his neighbor across the street as she is getting into a friend’s car. He then crosses the street with members of his family, calls her a “bitch” (and more), and spits in her face as his family surrounds the car and hurls insults. She spits back. Others arrive (apparently including members of her family), and a shouting match ensues. In the meantime, a police officer has appeared in time to see her spit (but not to see her aggressor do so). The officer arrests her for simple assault, and she is charged.
In a bench trial the court finds that appellant “actually did fear” and “reasonably believed that she was in imminent danger of bodily harm,” having testified that she was “scared for my life, like I didn’t know what they were going to do.” But the court disallows her claim of self-defense, concluding that her principal reason for spitting in response to her aggressor’s liquid assault was that “he came on my property and ... spit on me first”— words of anger, indignation, and outrage, said the court, not words of defense against attack. Moreover, the trial court appears to believe that mere spitting, while noxious though not excessive, was not an authentic defensive move. The court’s ultimate characterization of her mindset — that she sought “street justice,” not self-protection, in spitting back — summarizes the court’s rejection of self-defense.
The issue here, therefore, is whether a victim’s court-established fear of imminent bodily harm, coupled with non-excessive force — however weak — in response, is enough to justify a claim of self-defense; or whether that fear and response, once established without retraction, can be negated by additional findings that the victim’s dominant mindset was a desire for retribution, and that the force used was too lame to evidence either a fearful mindset or an attempt at self-protection.
The theory of the dissent is twofold:
[T]he [1] necessary state-of-mind inquiry is not fully satisfied upon a conclusion that the defendant actually and reasonably believed she was in imminent danger of bodily harm, and ... [2] the self-defense analysis also is not complete upon a further conclusion that the amount of force used was not excessive. Post, at 861.
Respectfully, I believe the dissenting theory is flawed.
First, it presupposes a threshold trial-court analysis of the defendant’s mindset that requires a probe of her motives and emotions, even after establishing her actual and reasonable belief of imminent bodily harm. According to the dissent, such a probe, without precedent, can cancel a court’s firm finding of the level of fear that the case law unequivocally says will justify a self-defense instruction (absent unreasonable force).
Second, the dissent’s theory posits, again without precedent, that the force used can be so weak that it not only negates any effort for self-protection (thereby negating a court-established belief of imminent bodily harm) but also negates the “reasonable force” limitation on self-defense by suggesting that an ineffectual *851 response was too weak to be “reasonable” — a limitation that traditionally disqualifies only excessive force.
Finally, the dissent offers no case law that says a retributive motive ultimately displaces the justification for self-defense even though the trial court has found, without qualification, that the defendant actually and reasonably believed she was in imminent danger of bodily harm.
These concerns require elaboration.
II.
I agree with Judge Easterly that, when evidence supports a claim of self-defense, the government has the burden of disproving beyond a reasonable doubt that the defendant (1) actually and reasonably believed she was in imminent danger of bodily harm and, in the event of such belief, (2) used only reasonable — meaning non-excessive — force to repel the attack. Ante, at 844-46.
Our dissenting colleague, however, advises that appellant failed to satisfy a third step: that despite an unequivocal, conclusive finding that appellant believed herself to be in imminent danger of bodily harm— a belief that, ordinarily would justify self-defense (when coupled with reasonable force) — the government can disprove the defense by satisfying the court that an additional motive negated her belief, and that the force employed was weak, not defensive.
I am not persuaded. In the first place, the dissent does not dispute the trial court’s unequivocal, unmodified first-step finding that appellant “reasonably believed” and “actually did fear that she was in danger of imminent bodily harm.” Ante at 841. Therefore, the dissent’s conclusion that this finding is not enough to justify a claim of self-defense (absent unreasonable force) must come either (1) from a source outside the two required self-defense findings, or (2) from a second-step finding that the force used was not “reasonable”; that is, instead of being excessive (the traditional ground for unreasonable force), the force of appellant’s spitting was so unreasonably lame that, along with appellant’s testimony, it nullified any motive of self-protection.
The dissent appears to take both positions. On the one hand, the dissent says the opinion for the court “fail[s] to give due attention to the lead-in clause that dictates when the ‘two-part’ test is applicable,” namely, that “[e]very person has the right to use a reasonable amount of force in self-defense if’ steps one and two are satisfied. Post, at 859, 859 n.8 (emphasis omitted). This quoted lead-in clause essentially says no more than that everyone is entitled to self-defense by meeting the two requirements for self-defense; it does not give life to an additional criterion that would nullify self-defense even when the two specified requirements are satisfied.
On the other hand, the dissent relies, in the alternative, on appellant’s spitting — a “predictably ineffectual,” “tit-for-tat act[] of retaliation,” post, at 858 n.6, 861 — to undermine the sufficiency of the trial court’s first-step finding that appellant’s fear of imminent bodily harm justified self-defense (absent unreasonable force). Under this approach, the dissent’s source of erosion of that first-step finding has to be the court’s second-step assessment of “reasonable force.” That is to say, the dissent has to mean that appellant did not “actually” and “reasonably” believe that the weak force used — her spitting — would be enough to protect her against “imminent bodily harm.” I have problems with this analysis.
First, this analysis does not appear in the trial court’s findings, quoted at length in the dissent. Post, at 856-57. Although the trial court speculated that appellant’s *852 spitting response to her assailant had no deterrent value, ante, at 849 n.30, the court focused almost exclusively on appellant’s expressed motivation — “street justice”; “he spit on me first” — not on a perceived weakness in appellant’s response as an independent basis for discounting her fearful, step-one mindset. Thus, absent any assertion that spitting can never count as “reasonable force” — indeed, the dissent agrees that on occasion it can, post, at 858 n.6 — I am concerned about appellate court fact-finding to bolster the dissent’s analysis.
Second, according to the government’s brief, the trial court — unlike the dissent— found that appellant, through her words, was motivated solely “by her desire to retaliate,” a finding inconsistent with the court’s threshold finding that appellant had “reasonably believed that she was in imminent danger of bodily harm.” Post, at 856. Thus, the court never questioned that spitting constituted reasonable force under the circumstances, and not even the prosecution has espoused the dissent’s reliance on the second-step (reasonable force) inquiry to inform the step-one (belief of imminent bodily harm) inquiry.
Third, I cannot agree that appellant’s spitting can disqualify her from claiming self-defense because of its presumed weakness as a response to the neighbor who spit at her first. Appellant’s response was “a proportionate reaction to the threat that [s]he perceived.”[1] The trial court’s perception that this response was not a reasonable deterrent to acceleration of the affray, ante, at 849 n.30 — ie., that (in the dissent’s words) the spitting was “predictably ineffectual,” post, at 861 — is supported only by speculation. If it is true (as I believe) that the trial court’s step-one finding entitled appellant to claim self-defense (when coupled with reasonable force), I cannot believe, given the absence of supportive case law, that ineffectual force can be deemed unreasonable simply because it is too lame rather than excessive.
Finally, I will assume for sake of argument that a step-two, “reasonable force” inquiry could inform a step-one, belief-of-imminent bodily harm inquiry — e.g., that a weak response to an attacker might signal that the defendant did not actually and reasonably believe that she was in imminent danger of bodily harm. But once that belief of imminent harm is established by a trial court finding, as in this case, it cannot be erased by invoking step two. My reasons follow.
III.
According to the court’s opinion, the victim’s actual perceptions will inform whether the force used under the circumstances is reasonable. Ante, at 845-46. For example, the intensity of an imminent threat of bodily injury may provoke a frenzied retaliation in self-defense, such as a hail of bullets, that ordinarily might seem excessive but in context appears reasonable.[2] Or, in the case of a “battered spouse” defense, a wife’s misperception that her husband was imminently threatening her life might justify a finding that her stabbing him was reasonable under the circumstances.[3] Therefore, when the most recent iteration of the criminal jury *853 instruction for non-deadly force says, with regard to the second step, that one “may use an amount of force which, at the time of the incident, s/he actually and reasonably believes is necessary to protect himself/herself from imminent bodily harm,”[4] this subjective inquiry — “actually believes” — is directed exclusively at the necessity of the force used, not at the motive for self-defense.[5] This, then, is the crucial distinction between the court’s opinion and the dissent: “Actual” belief is included in step two of the self-defense inquiry only to explain what force may be “reasonable” from the viewpoint of the defendant; it is not used as a potential offset to a firm, threshold finding of actual and reasonable belief of imminent bodily harm. Once the fact-finder (court or jury) has made that step-one finding, self-defense with reasonable (not excessive) force is justified without more. And nothing in our case law justifies canceling that finding — unless the court first erases it as a mistake, which did not happen here.
The dissent acknowledges that not all mixed motives necessarily preclude an assertion of self-defense. Post, at 844.[6] But I have no idea what the dissent’s formula is for deciding how many elements of retributive anger will dilute the unrebutted belief of imminent bodily harm to the point that the retributive motive can be found-as the dissent requires — to be “solely retaliatory and not defensive.” Post, at 860. Indeed, the dissent itself indicates how difficult it is to sort out motives. It “acknowledge[s] that sometimes a defendant may be less than fully articulate or less than candid about her reason for acting.” Post, at 862 n.14. Manifestly, therefore, in light of the trial court’s finding that appellant’s level of fear satisfied step one of the self-defense criteria, I do not understand how this court could conclude, with confidence, that appellant’s motive was “solely retaliatory and not defensive.” After all, in addition to justifying her response in part by saying “he spit on me first,” she also credibly testified, “I was scared for my life, like I didn’t know what they were going to do.”
Judge Easterly’s opinion for the court properly rejects a second-guess, weighing- and-balancing exercise once the trial court has found, without limitation, that the defendant experienced the belief of imminent bodily harm necessary to justify self-defense. I agree that it would be superfluous, indeed confusing, and contrary to the trial court’s unequivocal step-one finding, to try to sort out other motives that may be at work.
In sum, the fact that the defendant may have had a mixed mentality — great fear coupled with retributive anger — is irrelevant here. The latter cannot be used to negate the former once a defendant’s fear itself has been found, without caveat, to justify the use of reasonable force in self-defense.
*854 IY.
I add here, finally, a postscript to explain some of the jury instructions, as supported by relevant case law, that inform the majority’s analysis. It is interesting to note, first, that the criminal jury instruction for non-deadly force — the force used in this case of simple assault — had initially required, for the second-step inquiry, only that the defendant had “reasonably believe[d]” — not “actually and reasonably believe[dj” — that the amount of force used in self-defense was “necessary to protect himself/herself from imminent bodily harm.”[7] Moreover, until the court’s opinion in this case, the law applicable to simple assault has not acknowledged a subjective component of the second step of a self-defense analysis.[8] Thus, the dissent’s apparent reliance on appellant’s “actual” belief about the level of force required to dispel a mindset of fear justifying self-defense — derived from the second step of the self-defense inquiry (reasonable force)[9] —has no prior case law support.
In 2009, the pertinent criminal jury instruction for use of non-deadly force was amended to conform to the one traditionally used for deadly force.[10] Presumably, therefore, the defendant who uses non-deadly force today must have both “actually and reasonably believe[d]” that the force used was necessary for self-protection.[11] *855 For purposes of analysis, the opinion for the court, as well as the dissent, relies on that updated formulation here.[12] Moreover, the case law applicable to deadly force, most notably (though not exclusively) in homicide cases, has traditionally required that same, dual belief.[13] No explanation is offered with the 2009 instruction as to why the amendment for non-deadly force was adopted, but as explained above in section III, addition of “actual” to “reasonable” belief assures attention to the defendant’s subjective viewpoint in determining whether the defendant’s belief in the necessity of the force used was reasonable under the circumstances. It does not advert to the threshold, step-one mindset required to justify self-defense.
V.
I cannot help feeling that if appellant had whacked her assailant rather than spit on him, there would have been little, if any, basis for questioning whether a self-defense instruction (from the court to itself) was available in this case. Indeed, our dissenting colleague seems to agree. Post, at 858 n.6. But apparently the trial court rejected self-defense not because appellant lacked the belief of imminent bodily harm required to justify self-defense but, at least in part, because the court believed that the defensive response was too lame — a curious concern because the forbidden response, unreasonable force, is force too violent, not too weak (a puzzling concern our dissenting colleague shares).
To justify the dissent’s analysis, the trial court might have withheld or revoked its threshold finding that appellant “actually did fear” and “reasonably believed” that she was “in danger of imminent bodily harm.” But the court couldn’t, and thus wouldn’t, and therefore didn’t — thereby precluding the analysis that our dissenting colleague presents.
⅝ ⅝ ⅜ ‡ ⅝
For the reasons expressed above, I join the opinion of the court.

. Ewell v. United States, 72 A.3d 127, 130 (D.C. 2013).

. See Criminal Jury Instructions for the District of Columbia, No. 9.501C (5th ed. rev. 2016) ("In the heat of passion, a person may actually and reasonably believe something that seems unreasonable to a calm mind.”); id. No. 5.13C (4th ed. rev. 2008) (same).

.See 2 Wayne R. LaFave, Substantive Criminal Law § 10.4 (c) (2d ed. 2003) (citing State v. Kelly, 97 N.J. 178, 478 A.2d 364 (1984)).

. See Criminal Jury Instructions for the District of Columbia, No. 9.501A (5th ed. rev. 2016) (quoted infra).

. This interpretation is consistent with our recent, reorganized formulation of self-defense in a homicide case, Bassil v. United States, 147 A.3d 303 (D.C. 2016), explaining self-defense as (1) an honest believe of "imminent danger of serious bodily harm or death” and the "need[] to use deadly force to save [one]self from that danger,” coupled with (2) a requirement that "both those beliefs were objectively reasonable under the circumstances." Id. at 307.

.See LaFave, supra note 3, § 10.4 (c) (“[I]f [one] acts in proper self-defense, he does not lose the defense because he acts with some less admirable motive in addition to that of defending himself, as where he enjoys using force upon his adversary because he hates him.”).

. Criminal Jury Instructions for the District of Columbia, No. 5.13A (4th ed, rev, 2008), provides in full:
A person may use a reasonable amount of force in self-defense, A person may use an amount of force which, at the time of the incident, s/he reasonably believes is necessary to protect himself/herself from imminent bodily harm. (Emphasis added).

. See Ewell v. United States, 72 A.3d 127, 131-32 (D.C. 2013) (simple assault); Snell v. United States, 754 A.2d 289, 290 (D.C. 2000) (simple assault); Guillard v. United States, 596 A.2d 60, 63 (D.C. 1991) (simple assault); Potter v. United States, 534 A.2d 943, 945-46 (D.C. 1987) (simple assault); see also Kittle v. United States, 65 A.3d 1144, 1158 (D.C. 2013) (assault and felony threats); Higgenbottom v, United States, 923 A.2d 891, 900 (D.C. 2007) (assault with intent to kill while armed, aggravated assault while armed, assault with a dangerous weapon, mayhem while armed); McPhaul v. United States, 452 A.2d 371, 373-74 (D.C. 1982) (assault with a deadly weapon).
In Ewell, this court reversed a conviction for simple assault, holding (in part) that the trial court had erroneously instructed the jury on the use of deadly, not non-deadly, force in self-defense. Relying on McPhaul and Snell, we held that, for non-deadly force, a defendant had to meet a “less onerous standard,” showing only “a reasonable belief that he was in imminent danger of bodily harm,” 72 A.2d at 131, whereas for deadly force the defendant had to show both an "honest[]" and a "reasonabl[e]” belief that “he was in imminent danger of serious bodily harm.” Id. at 132 (emphasis added) (internal quotation marks omitted). In a footnote, the court also referenced the different instructions for deadly and non-deadly force in the Criminal Jury Instructions for the District of Columbia Nos. 9.501A and 9.501B (5th ed. 2009), in order to evidence the distinction between “bodily harm” and "serious bodily harm,” Presumably in light of binding case law, however, the court did not address the change from the fourth (2008) edition of the Instructions in 9.501 A: that self-defense with non-deadly force henceforth required a showing that the defendant "actually,” as well as "reasonably,” believed the amount of force used "was necessary to protect himselRherself from imminent bodily harm.”

. See supra section III (explaining "the crucial distinction between the court’s opinion and the dissent”).

. See Criminal Jury Instructions for the District of Columbia, No. 9.501A (5th ed. 2009). This formulation of Instruction No. 9.501A remains unchanged and is found in the most recent (2016) revised version of the Criminal Jury Instructions for the District of Columbia.

. Instruction No. 9.501A, see supra note 9, provides in full:
A person may use a reasonable amount of force in self-defense. A person may use an *855 amount of force which, at the time of the incident, s/he actually and reasonably believes is necessary to protect himself/herself from imminent bodily harm. (Emphasis added),

. Years ago, in an opinion concerning defense of a third person, we acknowledged that "[t]he right of self-defense, and especially the degree of force the victim is permitted to use to prevent bodily harm, is premised substantially on the victim’s own reasonable perceptions of what is happening.” Fersner v. United States, 482 A.2d 387, 391 (D.C. 1984).

. The decision underlying the line of homicide self-defense cases is United States v. Peterson, 483 F.2d 1222, 1229-30 (D.C. Cir. 1973). See Bassil v. United States, 147 A.3d 303, 306-07 (D.C. 2016); Richardson v. United States, 98 A.3d 178, 187 (D.C. 2014); Edwards v. United States, 721 A.2d 938, 941 (D.C. 1998); Smith v. United States, 686 A.2d 537, 544 (D.C. 1996), cert. denied, 522 U.S. 839, 118 S.Ct. 115, 139 L.Ed.2d 67 (1997); Swann v. United States, 648 A.2d 928, 930 (D.C. 1994); Brown v. United States, 619 A.2d 1180, 1182 (D.C. 1992).
In particularly violent assault cases which do not result in homicide, a deadly force instruction for self-defense may be appropriate. See, e.g., Travers v. United States, 124 A.3d 634, 639 (D.C. 2015) (felony assault and mayhem); Freeman v. United States, 912 A.2d 1213, 1220 (D.C. 2006) (assault with intent to kill while armed); Harper v. United States, 608 A.2d 152, 155 (D.C. 1992) (assault with a dangerous weapon); LaFave, supra note 3, § 10.4 (a).